

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. PD-1702-12, PD-1703-12

**MICHAEL FRED WEHRENBERG, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### PARKER COUNTY

ALCALA, J., delivered the opinion of the Court in which KELLER, P.J., PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined.  PRICE, J., filed a concurring opinion.  MEYERS, J., filed a dissenting opinion.

## O P I N I O N

Is the federal independent source doctrine, which excepts from the exclusionary rule evidence initially observed during an unlawful search but later obtained lawfully through independent means, applicable in Texas?  The State raises this question in its petition for discretionary review after the court of appeals reversed two felony drug convictions of

Michael Fred Wehrenberg, appellant, on the grounds that the trial court erred by applying that doctrine as a basis to deny appellant's motion to suppress. *Wehrenberg v. State*, 385 S.W.3d 715 (Tex. App.—Fort Worth 2012) (holding that independent source doctrine is inconsistent with Texas's exclusionary rule and thus inapplicable in this State). We agree with the State that the independent source doctrine poses no conflict with Article 38.23 of the Texas Code of Criminal Procedure, the statutory exclusionary rule in Texas that requires suppression of evidence "obtained" in violation of the law. *See* TEX. CODE CRIM. PROC. art. 38.23; *Segura v. United States*, 468 U.S. 796, 813-14 (1984) (holding that exclusion of evidence as fruit of the poisonous tree was "not warranted" because "there was an independent source for the warrant under which [the challenged] evidence was seized"). Because the independent source doctrine does not circumvent or avoid the statutory exclusionary rule's requirement that evidence obtained in violation of the law be suppressed, we conclude that the court of appeals erred by rejecting that doctrine as a basis for upholding the trial court's suppression ruling. We reverse and remand.

## I. Background and Procedural History

### A. Facts and Trial Proceeding

A police anti-narcotics unit had been conducting surveillance of a Parker County residence for approximately thirty days when officers received a call from a confidential informant advising them that the occupants were preparing to manufacture methamphetamine that night. Several hours after receiving that call, at approximately 12:30 a.m., officers

entered the residence without a search warrant and without consent. Upon entering the residence, the officers encountered several individuals, including appellant, whom they handcuffed and escorted to the front yard. Officers performed a protective sweep of the residence, determined that no methamphetamine was being "cooked" at that time, and then went back outside the residence. Two investigators then prepared the search-warrant affidavit. The affidavit relied only on information provided by the confidential informant and did not mention the officers' warrantless entry into the residence. In relevant part, the affidavit stated that the informant had "provided information detailing narcotics manufacture and trafficking" at appellant's residence and had, within the past 72 hours, "personally observed the suspected parties in possession of certain chemicals with intent to manufacture a controlled substance." The affidavit additionally stated that, according to the confidential informant, the subjects were planning to use the "shake and bake" method of manufacturing methamphetamine, which the affiant described as "fast" and "often utilized to prevent detection of the illicit laboratory by law enforcement personnel."

At 1:50 a.m., approximately one-and-a-half hours after the officers' initial entry into the residence, the magistrate signed the search warrant. Police officers conducted a search of the residence and discovered methamphetamine and implements for manufacturing methamphetamine. Appellant was arrested and charged with possession of chemicals with intent to manufacture methamphetamine and possession of methamphetamine weighing more

than 4 but less than 200 grams.[1]

Appellant moved to suppress the evidence, arguing that the officers' warrantless entry was unlawful and that all evidence seized thereafter was subject to suppression. The State, in response, argued that the search warrant was a valid basis for admitting the challenged evidence. At the hearing on the motion to suppress, the trial court heard testimony from Investigator Montanez, one of the officers who had prepared the search-warrant affidavit. Regarding the initial entry, Montanez stated that upon receiving the informant's tip that the subjects were "fixing to cook methamphetamine," the officers decided to "pull[] everybody out of the house and place[] them in the front yard" in order to "keep from evidence being destroyed." Montanez additionally explained that it was necessary to "secure the residence" because the process of "cooking" methamphetamine via the "shake-and-bake method" is "volatile" and "hazardous" in that it can cause explosions and/or fire, and he was "afraid that [the subjects] would begin making methamphetamine and then a fire would break out." Regarding the search warrant, Montanez testified that the affidavit's contents were based solely on the confidential informant's tip. He stated that he left to go get the warrant signed "immediately" after appellant and his co-defendants were detained, and that he returned to the scene around 2 a.m., at which time the search warrant was executed.

The trial court granted in part and denied in part appellant's motion to suppress. Announcing his ruling, the trial judge stated that the officers' initial entry into the residence

---

[1] *See* TEX. HEALTH & SAFETY CODE §§ 481.115; 481.124.

was "without a lawful warrant, exigent circumstances, or other lawful basis," and that, therefore, "any evidence from that search and seizure during that entry and detention at the initial entry to the home is suppressed." The trial judge went on to explain, however, that evidence seized pursuant to the search warrant was not subject to suppression because the search-warrant affidavit did not "allude to or mention the previous entry of the home, nor the detention of the suspect inhabitant defendants," and, therefore, the warrant was "untainted by the previous entry and detention."[2] Appellant subsequently pled guilty pursuant to a plea-bargain agreement and was sentenced to five years' confinement on each count, to run concurrently. Appellant expressly reserved his right to appeal the trial court's ruling on the motion to suppress.

**B. Court of Appeals's Holding and Arguments on Discretionary Review**

In the court of appeals, appellant contested the trial court's conclusion that the search warrant could serve as a valid basis for admitting the challenged evidence. He argued that (1) the officers' initial entry into the residence was unjustified by any exception to the warrant requirement and thus constituted an unlawful search, and (2) officers obtained information during that unlawful search that later served as the basis for the search-warrant

---

[2]    Aside from these statements, the trial court did not make written findings of fact and conclusions of law, although findings and conclusions were properly requested by appellant, the losing party in the trial court. In its opinion on direct appeal, the court of appeals took note of the absence of findings of fact and conclusions of law, but it did not abate this case to the trial court to enter findings and conclusions. *See Wehrenberg v. State*, 385 S.W.3d 715, 717 (Tex. App.—Fort Worth 2012). We express no opinion at this time as to whether the court of appeals should, upon remand, abate this case to the trial judge to enter findings and conclusions as requested by appellant.

affidavit, and, therefore, the warrant was "tainted from the use of information gained in and from the warrantless entry of the home." Appellant essentially disputed the trial court's assessment that the search-warrant affidavit was based solely on information provided by the confidential informant, but he did not directly argue that the independent source doctrine was inapplicable in this State. In response to appellant's arguments, the State contended that suppression was not required because (1) the officers' initial entry into the residence was justified by exigent circumstances, and, alternatively (2) the search warrant was a valid basis for admitting the challenged evidence under the independent source doctrine because it was issued based solely on information provided by the confidential informant and thus was untainted by any pre-warrant intrusion into the residence.

After agreeing with appellant and the trial court that the officers' initial entry into the residence was unlawful, the court of appeals held that the trial court erred by finding that the search warrant was a valid basis for admitting the challenged evidence under the independent source doctrine. *See Wehrenberg*, 385 S.W.3d at 727-29. Although the court of appeals agreed with the State's contention that this case "would appear to fall squarely within the parameters of the independent source doctrine" because "all of the information contained in the search warrant affidavit was derived from facts that were made known to [the officers] by the confidential informant before the warrantless entry into the residence," it ultimately concluded that the doctrine was inapplicable in Texas, for three reasons. *Id*. at 727. First, the court of appeals noted that it had declined to adopt the independent source doctrine in its

prior opinion in *Oliver v. State*. *Id*. (citing 711 S.W.2d 442, 445 (Tex. App.—Fort Worth 1986, pet. ref'd)) (reasoning that both inevitable discovery and independent source doctrines constitute "judicial exceptions to the judicially articulated exclusionary rule," and declining to apply those doctrines because Texas's statutory exclusionary rule plainly "contains no exceptions"). Second, the court of appeals noted that this Court has, on at least two prior occasions, in *State v. Daugherty* and *Garcia v. State*, "declined to recognize that the federal inevitable discovery doctrine is an exception to the statutory Texas exclusionary rule." *Id*. (citing *State v. Daugherty*, 931 S.W.2d 268, 269-73 (Tex. Crim. App. 1996); *Garcia v. State*, 829 S.W.2d 796, 798-800 (Tex. Crim. App. 1992)). Although it recognized that this Court's opinions in *Daugherty* and *Garcia* addressed only the inevitable discovery doctrine, not the independent source doctrine, the court of appeals reasoned that those two doctrines are "actually two sides of the same coin," and, therefore, this Court's rejection of the inevitable discovery doctrine in those cases necessarily implied that the independent source doctrine should similarly be rejected. *Id*. at 727-28 (quoting *United States v. Grosenheider*, 200 F.3d 321, 327 (5th Cir. 2000)). Third, the court of appeals noted that this Court has "not squarely addressed whether or not the independent source doctrine applies in Texas," although it acknowledged that this Court has, on one prior occasion, suggested in dicta that the doctrine is applicable. *Id*. at 728-29 (citing *State v. Powell*, 306 S.W.3d 761, 769 (Tex. Crim. App. 2010)). On these bases, the court of appeals held that the independent source doctrine was inapplicable and could not serve as a valid basis for upholding the trial court's suppression

ruling. *Id*.

In its petition for discretionary review, the State contends that the court of appeals erred by holding that the independent source doctrine conflicts with Texas's statutory exclusionary rule. It argues that evidence obtained through an independent source has "no causal link" to the prior instance of illegal activity, and that such evidence, therefore, "is not obtained in violation of the law" within the meaning of the Texas exclusionary rule. Moreover, the State contends that the independent source doctrine is actually more compatible with the Texas exclusionary rule than the attenuation doctrine, a related doctrine that this Court has embraced, and that it is analytically distinct from the inevitable discovery doctrine, which this Court has rejected. Appellant responds that the court of appeals correctly concluded that the independent source doctrine is inapplicable in this State, or, alternatively, that the doctrine would not apply to his case because the search-warrant affidavit was based on evidence unlawfully observed by officers during their initial entry into the residence. This Court granted the State's petition to determine whether the court of appeals erred by holding that the independent source doctrine conflicts with the statutory exclusionary rule and is inapplicable in Texas.[3] We agree with the State's contentions and hold that the independent source doctrine is applicable in Texas.

---

[3]     The question before us in this case is a question of law that we review de novo. *See Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). Regarding appellant's argument that the independent source doctrine, even if generally applicable, does not apply to the facts of his case, we do not address that argument in this opinion because it is more properly addressed upon remand.

## II. Independent Source Doctrine Provides for Admissibility of Untainted Evidence

### A. General Scope of Independent Source Doctrine

Before answering the question of whether the independent source doctrine is consistent with the plain terms of the Texas exclusionary rule, we must first define the scope of that doctrine. We initially note that the federal exclusionary rule generally requires suppression of both primary evidence obtained as a direct result of an illegal search or seizure, as well as derivative evidence acquired as an indirect result of unlawful conduct. *See Segura*, 468 U.S. at 804 (exclusionary remedy "'extends as well to the indirect as the direct products' of unconstitutional conduct") (quoting *Wong Sun v. United States*, 371 U.S. 471, 484 (1963)). The Supreme Court has, however, developed several exceptions to this rule, including the independent source doctrine. That doctrine was first referred to by the Supreme Court in *Silverthorne Lumber Company v. United States*, in which the Court recognized that facts do not become "sacred and inaccessible" simply because they are first discovered unlawfully; rather, "[i]f knowledge of [facts] is gained from an independent source they may be proved like any others[.]" 251 U.S. 385, 392 (1920). The Supreme Court has subsequently elaborated on this principle on several occasions. *See Murray v. United States*, 487 U.S. 533, 537 (1988); *Segura,* 468 U.S. at 814-16; *Nix v. Williams*, 467 U.S. 431, 443 (1984).

In *Segura*, the Supreme Court explained that "[i]t has been well established for more than 60 years that evidence is not to be excluded if the connection between the illegal police

conduct and the discovery and seizure of the evidence is 'so attenuated as to dissipate the taint.' It is not to be excluded, for example, if police had an 'independent source' for discovery of the evidence[.]" *Segura*, 468 U.S. at 805 (quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)). At its core, the independent source doctrine provides that evidence derived from or obtained from a lawful source, separate and apart from any illegal conduct by law enforcement, is not subject to exclusion. *Nix*, 467 U.S. at 443 (describing doctrine as permitting "admission of evidence that has been discovered by means wholly independent of any constitutional violation"); *Murray*, 487 U.S. at 537 (stating that independent source doctrine permits introduction of "evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality").[4] Thus, in determining whether challenged evidence is admissible under the independent source doctrine, the central question is "whether the evidence at issue was obtained by independent legal means." *United States v. May*, 214 F.3d

---

[4] *See also United States v. Brooks*, 715 F.3d 1069, 1075 (8th Cir. 2013) ("Under the independent source doctrine, the exclusionary rule is inapplicable where the evidence was acquired through a source independent of the tainted search."); *United States v. Oliver*, 630 F.3d 397, 408 (5th Cir. 2011) ("Evidence not obtained as a result of police illegality, but rather through a legal, independent source, need not be suppressed."); *United States v. Etchin*, 614 F.3d 726, 736-37 (7th Cir. 2010) ("when a later-arriving warrant is based on information 'wholly unconnected' to the illegal entry, evidence discovered during the search is admissible because its discovery is based on an independent source") (quoting *Segura v. United States*, 468 U.S. 796, 814 (1984)); *United States v. Dice*, 200 F.3d 978, 984 (6th Cir. 2000) ("'independent source doctrine' deems evidence admissible in those situations where an illegal search takes place at some point during a criminal investigation, but where a proper, independent search led to the evidence in question"); *United States v. Grosenheider*, 200 F.3d 321, 327 (5th Cir. 2000) (explaining that independent source doctrine "permits the introduction of unlawfully discovered evidence when the police have acquired [it] through a distinct, untainted source").

900, 906 (7th Cir. 2000).[5]

**B. *Segura v. United States***

*Segura v. United States* established that, notwithstanding a prior instance of unlawful police conduct, evidence actually discovered and obtained pursuant to a valid search warrant is not subject to suppression, so long as the police would have sought the warrant regardless of any observations made during the illegal entry. *See Segura*, 468 U.S. at 799, 813-15.[6] In *Segura*, the question before the Supreme Court was whether suppression was required after the police, acting on a tip regarding possible drug-trafficking activity, entered the defendant's apartment without his consent and conducted a security sweep of the residence. *Id*. at 799-801. No search warrant was obtained until the next day, 19 hours after the initial entry, at which point a search was conducted and several items of evidence were discovered and seized, including weapons, cash, and several pounds of cocaine. *Id*. None of these items was observed by officers during the initial entry; rather, they were discovered for the first time

---

[5]  The independent source doctrine is motivated by a recognition that society's interest in deterring unlawful police conduct and its interest in having juries receive all probative evidence "are properly balanced by putting the police in the same, not a worse, position than they would have been in if no police error or misconduct had occurred." *Nix v. Williams*, 467 U.S. 431, 443 (1984) (comparing independent source and inevitable discovery doctrines and noting that both doctrines are motivated by same underlying rationale). When the challenged evidence is actually obtained through a source independent of a separate instance of unlawful police conduct, "exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation." *Id*.; *see also Murray v. United States*, 487 U.S. 533, 537 (1988).

[6]  *See also United States v. Glinton*, 154 F.3d 1245, 1254 (11th Cir. 1998) (explaining that, "if the search warrant was obtained based upon information from an independent source, then the warrantless entry, even though illegal, [does] not require exclusion of [the] evidence").

during the subsequent search pursuant to the warrant. *Id*. at 804. After determining that the initial entry into the defendant's apartment had been unlawful, the Supreme Court nevertheless concluded that the evidence seized pursuant to the search warrant need not be excluded "as derivative or fruit of the poisonous tree" because of the existence of an "independent source." *Id*. at 813-14. Explaining its ruling, the Court stated that suppression was not warranted because the "evidence [was] discovered during the subsequent search of the apartment the following day pursuant to the valid search warrant," and the warrant was "issued wholly on information known to the officers before the entry into the apartment." *Id*. at 799. It further observed that "[n]one of the information on which the warrant was secured was derived from or related in any way to the initial entry into petitioners' apartment." *Id*. at 814. The information supporting the search warrant instead "came from sources wholly unconnected with the entry and was known to the agents well before the initial entry." *Id*. Because "[n]o information obtained during the initial entry or occupation of the apartment was needed or used by the agents to secure the warrant," the officers' preexisting knowledge provided an independent source for the discovery and seizure of the evidence. *Id*. Given that the illegal entry had nothing to do with the later discovery and seizure of evidence pursuant to the warrant, the Court deemed that evidence untainted and admissible. *See Hudson v. Michigan*, 547 U.S. 586, 600 (2006) (describing *Segura* as distinguishing "the effects of the illegal entry from the effects of the legal search"). Moreover, *Segura* instructs that the existence of an independent source makes the

exclusionary rule inapplicable because it "breaks the causal chain between the constitutional violation alleged and the discovery of the evidence challenged." *United States v. Scott*, 270 F.3d 30, 44 (1st Cir. 2001).

### C. *Murray v. United States*

Subsequent to *Segura*, the Supreme Court has explained that the independent source doctrine is broad enough to encompass both (1) evidence observed and obtained for the first time during an independent lawful search following a previous instance of unlawful police conduct, which was the factual situation in *Segura*, and (2) evidence observed in plain view during an initial unlawful entry but later "obtained independently from activities untainted by the initial illegality," the situation presented in *Murray*. *Murray*, 487 U.S. at 542. In *Murray*, after receiving a tip from an informant, federal drug-enforcement agents entered a warehouse by force and without a warrant, at which time they observed drugs in plain view. *Id*. at 535. The officers then left the warehouse without disturbing the drugs, but kept the location under surveillance. *Id*. Eight hours later, the agents secured a search warrant based solely on information already in their possession prior to the initial entry. They then re-entered the warehouse and seized 270 bales of marijuana. *Id*. at 535-36. In holding that the drugs were not tainted by the initial entry and not subject to suppression, the Supreme Court explained that, although "[k]nowledge that the marijuana was in the warehouse was assuredly acquired at the time of the unlawful entry," it was "also acquired at the time of entry pursuant to the warrant, and if that later acquisition was not the result of the earlier entry there is no

reason why the independent source doctrine should not apply." *Id*. at 541. So long as the later, lawful seizure was "genuinely independent of an earlier, tainted one," the independent source doctrine would apply to carry the challenged evidence outside the scope of the exclusionary remedy. *Id*. *Murray* thus stands for the proposition that, in cases involving a warrant obtained after an initial unlawful search during which officers observed the evidence in plain view, the challenged evidence is nevertheless admissible so long as the "search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue." *Murray*, 487 U.S. at 542.[7]

Reading *Segura* and *Murray* in conjunction, we observe that the core function of the independent source doctrine is to remove from the scope of the federal exclusionary rule evidence that is actually discovered through an independent source and thus is untainted by the prior instance of unlawful police conduct. Having defined the contours of the doctrine, we now turn to the question of whether application of that doctrine is consistent with Texas's statutory exclusionary rule. *See Baker v. State*, 956 S.W.2d 19, 23 (Tex. Crim. App. 1997) (noting that "whether a recognized exception to a federal exclusionary rule also applies to Article 38.23 depends upon whether the exception is consistent with the language of Article 38.23").

---

[7]     Applying this aspect of *Murray*, the federal courts of appeals have held that evidence obtained through a search conducted pursuant to a warrant is derived from a "genuinely independent source" if the record indicates that (1) officers would have sought a warrant regardless of any prior unlawful search, and (2) the magistrate did not rely on information obtained by officers during the prior search in making a probable-cause determination. *See, e.g.*, *United States v. Mowatt*, 513 F.3d 395, 404 (4th Cir. 2008); *United States v. Markling*, 7 F.3d 1309, 1315 (7th Cir. 1993).

**III. Independent Source Doctrine Consistent With Texas Exclusionary Rule**

The primary dispute in this case centers on whether evidence derived from an independent source following a prior instance of unlawful police conduct is nevertheless "obtained" in violation of the law, thereby requiring suppression under Texas's statutory exclusionary rule. *See* TEX. CODE CRIM. PROC. art. 38.23. The State contends that, contrary to appellant's contention and the conclusion reached by the court of appeals, evidence acquired pursuant to an independent source is not actually "obtained" in violation of the law because it is not derived in any way from a prior instance of illegal conduct. *See Segura*, 468 U.S. at 814; *Murray*, 487 U.S. at 542. It argues that, because there is no causal connection between the prior illegality and the seizure of evidence, suppression is not required under Article 38.23. We agree with the State that evidence obtained pursuant to an independent source, much like evidence for which a prior taint has been attenuated, is not "obtained" in violation of the law and is thus not subject to suppression. *See* TEX. CODE CRIM. PROC. art. 38.23; *Johnson v. State*, 871 S.W.2d 744, 750-51 (Tex. Crim. App. 1994) (holding that federal attenuation doctrine is consistent with Article 38.23 because "evidence sufficiently attenuated from the violation of the law is not considered to be 'obtained' therefrom"). We, therefore, conclude that the court of appeals erred by rejecting that doctrine as a basis for upholding the trial court's suppression ruling. *See Wehrenberg*, 385 S.W.3d at 728-29.

**A. Unlawfully "Obtained" Evidence Must Be Excluded Under Texas Exclusionary Rule**

The Texas exclusionary rule provides in relevant part that "No evidence obtained . .

. in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. art. 38.23. To determine the meaning of this provision, we examine its plain language. *See Boykin v. State*, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991); *see also Daugherty*, 931 S.W.2d at 270 (examining plain language of Article 38.23); *Johnson*, 871 S.W.2d at 750 (same); *Garcia,* 829 S.W.2d at 799 (same).

Evidence is "obtained" if it is "possessed," "gained or attained," usually "by planned action or effort." Webster's New Collegiate Dictionary 816 (9th ed. 1988); *see also Daugherty*, 931 S.W.3d at 270 (same). Applying this definition in the context of the Texas exclusionary rule, the word obtained means that evidence is acquired by planned action or effort, or, more specifically, by seizure. *Id*. Applying this ordinary definition, this Court has previously interpreted Article 38.23 to mean that evidence is "obtained" in violation of the law only if there is some causal connection between the illegal conduct and the acquisition of evidence. *Roquemore v. State*, 60 S.W.3d 862, 870 (Tex. Crim. App. 2001); *Daugherty*, 931 S.W.2d at 270 ("Once the illegality and its causal connection to the evidence have been established, the evidence must be excluded" under Article 38.23). Conversely, if there is no causal connection, then the evidence cannot be said to have been "obtained" in violation of the law and thus is not subject to exclusion under the statute. *Daugherty*, 931 S.W.2d at 270-71; *Powell*, 306 S.W.3d at 770 n.18 (noting in dicta that "[a]bsent a 'but-for' causal

connection between any unlawful seizure . . . and the discovery of [evidence], our state exclusionary rule . . . would not require exclusion"); *Sorto v. State*, 173 S.W.3d 469, 487 n.71 (Tex. Crim. App. 2005) (suppression not warranted because, among other factors, there was no showing of "any causal connection" between purported violation of law and challenged evidence). The existence of a but-for causal connection between the illegality and the obtainment of evidence is thus a prerequisite to application of the statutory exclusionary rule, for without at least some causal link, the evidence is not properly understood as having been "obtained" unlawfully, as an ordinary person would interpret that term. *See Daugherty,* 931 S.W.2d at 270; *Johnson*, 871 S.W.2d at 750.

Furthermore, this Court has long recognized that evidence is not "obtained" in violation of the law within the plain meaning of Article 38.23 if the taint from the illegality has dissipated by the time the evidence is acquired. *Johnson*, 871 S.W.2d at 750. In *Johnson*, this Court adopted the federal attenuation doctrine as being consistent with the express provisions of Article 38.23 because "evidence sufficiently attenuated from the violation of the law is not considered to be 'obtained' therefrom." *Id*. at 750-51. The Court further reasoned that the attenuation doctrine was not an impermissible non-statutory exception to the exclusionary rule, but rather was "a method of determining whether evidence was 'obtained' in violation of the law, with 'obtained' being included in the plain language of the statute." *Id*. at 751; *see Wong Sun*, 371 U.S. at 487-88 (describing attenuation analysis as being an inquiry into "whether, granting establishment of the primary illegality, the

[challenged] evidence . . . has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint"); *State v. Mazuca*, 375 S.W.3d 294, 300 n.18 (Tex. Crim. App. 2012) (noting that attenuation doctrine "applies in determining whether evidence has been unlawfully 'obtained' for purposes of" Article 38.23).

In *Daugherty v. State*, the Court reaffirmed the correctness of its approach in *Johnson* with respect to the attenuation doctrine. 931 S.W.2d at 270-71. It noted that "[t]he ordinary meaning of 'obtained' may accommodate the attenuation doctrine inasmuch as, depending on how removed the actual attainment of the evidence is from the illegality, the ordinary person would not consider that evidence to have been 'obtained' by that illegality." *Id.* at 270 (observing that, under plain-language interpretation of Article 38.23, there is "a point beyond which the 'ordinary understanding' of obtained just does not apply"). Thus, when the causal relationship between the illegality and the acquisition of evidence is attenuated, exclusion is not required because the "ordinary meaning of 'obtained' does not extend to such a remote, or 'attenuated,' causal relationship." *Id.* at 270-71.

As we observe above, the independent source doctrine provides that evidence actually obtained pursuant to a distinct, untainted source is not subject to suppression because, in such cases, the prior illegality does "not contribute in any way to discovery of the evidence seized under the warrant." *Segura*, 486 U.S. at 815. In cases involving an independent source, "not even the threshold 'but for' requirement" is met. *Id.*; *see also United States v. Crews*, 445

U.S. 463, 471 (1980); *Murray*, 487 U.S. at 539.  Because the independent source doctrine is applicable only to situations in which there is no causal link between the illegal conduct and the discovery or seizure of evidence, application of that doctrine is entirely consistent with the statutory exclusionary rule's requirement that evidence "obtained" in violation of the law is subject to suppression.  *See* TEX. CODE CRIM. PROC. art. 38.23; *Johnson*, 871 S.W.2d at 750; *Daugherty,* 931 S.W.2d at 271; *see also Segura*, 468 U.S. at 814 (discussing absence of causal link in situations involving independent source).

Moreover, given this Court's rationale for determining in *Johnson* that the attenuation doctrine is consistent with the Texas exclusionary rule, that same rationale leads us to conclude that the independent source doctrine is also compatible with it.[8]  *See Johnson*, 871 S.W.2d at 750-51.  If it is true, as this Court stated in *Johnson*, that evidence is not "obtained" in violation of the law if the causal relationship between the illegality and the

---

[8]     Professors Dix and Schmolesky have reached a similar conclusion regarding the applicability of the independent source doctrine.  *See* 40 George E. Dix & John M. Schmolesky, *Texas Practice Series: Criminal Practice and Procedure* § 7:51 (3d ed. 2011) (citations omitted) (noting that independent source doctrine is not properly understood as an exception to the exclusionary rule, but rather "simply describes the conclusion that challenged evidence was not acquired as a factual result of the demonstrated illegality and thus need not be excluded").  Describing the meaning of the statutory exclusionary rule as it applies to the independent source doctrine, professors Dix and Schmolesky have observed,

> Since Article 38.23 requires exclusion only of evidence that was "obtained in" violation of the covered legal requirements, an "independent source" rule is a logical consequence of the statute's requirement that challenged evidence have factually resulted from the demonstrated illegality.  This is quite clearly the law.

*Id.*

seized evidence is too remote or attenuated to be recognized, then it is also certainly true that evidence is not unlawfully "obtained" if there is no causal relationship between the prior illegality and a later lawful discovery of evidence, as in the independent source context. Furthermore, like the attenuation doctrine, the independent source doctrine does not constitute an impermissible non-statutory exception to the Texas exclusionary rule because it falls squarely within its plain terms. *See* TEX. CODE CRIM. PROC. art. 38.23; *Johnson*, 871 S.W.2d at 751.

Our analysis is bolstered by dicta in *State v. Powell*, in which this Court stated that, even assuming the existence of a prior Fourth Amendment violation, exclusion of evidence was not required due to a lack of a causal relationship between the illegality and seizure of evidence:

> In this case . . . we are unable to conclude that there is any causal connection between any unlawful seizure of the safes and the otherwise lawful search of the safes resulting in the acquisition of the methamphetamine by the police. This otherwise lawful search of the safes was "wholly unrelated" to any prior unlawful seizure of these safes. . . . In this case, the methamphetamine was not obtained because the police may have unlawfully seized the safes but "because of a subsequent search pursuant to a lawful warrant."

306 S.W.3d at 769-71 (citations omitted). *Powell* thus signaled this Court's support for the proposition that, in the absence of any causal connection between a prior instance of unlawful police conduct and a subsequent seizure of evidence pursuant to a valid search warrant, the statutory exclusionary rule would not require suppression. *Id*.

Because the independent source doctrine by definition applies only to situations in which there is no causal connection between the illegality and the obtainment of evidence, we conclude that an ordinary person would not consider evidence seized pursuant to an independent source to be "obtained" in violation of the law. *See* TEX. CODE CRIM. PROC. art. 38.23; *Daugherty*, 931 S.W.2d at 270; *Johnson,* 871 S.W.2d at 750-51. The independent source doctrine, therefore, is consistent with the plain terms of the Texas exclusionary rule.

**B. Independent Source Doctrine Distinct from Inevitable Discovery**

In a related argument, appellant urges this Court to agree with the court of appeals's conclusion that the independent source doctrine must be rejected on the basis that it is the functional equivalent of the inevitable discovery doctrine, which has been disavowed in Texas. *See Wehrenberg*, 385 S.W.3d at 727 (noting that "several federal courts . . . do not draw a relevant distinction" between those doctrines, and describing inevitable discovery as an "extrapolation" from independent source). We, however, conclude that this Court's prior rejection of the inevitable discovery doctrine does not compel rejection of the independent source doctrine.

As the court of appeals observed, this Court has previously concluded that the inevitable discovery doctrine is inapplicable in Texas based on that doctrine's inconsistency with the plain language of the statutory exclusionary rule. *See Daugherty,* 931 S.W.2d at 269-71; *Garcia*, 829 S.W.2d at 799-800. In *Garcia*, a plurality of this Court observed that the inevitable discovery doctrine is "a species of harmless error rule which holds that

constitutional violations in the seizure of evidence are inconsequential for purposes of admissibility . . . when the outcome of police investigation was probably unaffected by it." 829 S.W.2d at 798. In reaching its conclusion that the doctrine was inapplicable, the *Garcia* plurality noted that the inevitable discovery doctrine, by its terms, applies only to situations that involve actual unlawful seizures of evidence. *Id.* at 798-99. This aspect of the doctrine, it observed, could not be squared with the statutory exclusionary rule's absolute requirement of exclusion of all evidence seized in violation of the Fourth Amendment. *Id*. at 798 (citing language of TEX. CODE CRIM. PROC. art. 38.23 that provides for exclusion of evidence "obtained" in violation of law).

A majority of the Court later adopted the reasoning of *Garcia* in *Daugherty*, holding that evidence "actually 'obtained in violation of the law'" was subject to suppression under Article 38.23, regardless of "whether or not it might later have been 'obtained' lawfully." 931 S.W.2d at 268. The *Daugherty* Court explained that the inevitable discovery doctrine by definition "*assumes* a causal relationship between the illegality and the evidence. It *assumes* that the evidence was actually 'obtained' illegally." *Id*. The Court further reasoned that "the fact that evidence could have been 'obtained' lawfully anyway does not negate the fact that it was in fact 'obtained' illegally." *Id*.

The court of appeals relied on *Garcia* and *Daugherty* in reaching its conclusion that the similarities between the independent source and inevitable discovery doctrines make them equally inapplicable in this State. *Wehrenberg*, 385 S.W.3d at 727-28. Although we

recognize that the independent source and inevitable discovery doctrines are closely related, we disagree with the court of appeals's assessment that the doctrines, by virtue of their similarity, warrant identical treatment in the context of applying the statutory exclusionary rule. Contrary to the court of appeals's conclusion, the independent source and inevitable discovery doctrines are not functionally the same. *See United States v. Markling*, 7 F.3d 1309, 1318 n.1 (7th Cir. 1993) (noting that two doctrines are "closely related" but "not the same"). Although both doctrines are commonly described as "exceptions" to the federal exclusionary rule, they apply to different factual situations. *Nix*, 467 U.S. at 443-44; *Crews*, 445 U.S. at 470. As discussed above, the independent source doctrine applies to situations involving a seizure or discovery of evidence "by means wholly independent of any constitutional violation" following a prior instance of unlawful police conduct. *Nix*, 467 U.S. at 443; *see also Segura*, 468 U.S. at 814; *Murray,* 487 U.S. at 539 (doctrine applies when evidence was "subsequently obtained by lawful, independent means"); *United States v. Siciliano*, 578 F.3d 61, 68 n.4 (1st Cir. 2009) (explaining that independent source doctrine, unlike inevitable discovery, "requires lawful discovery of the evidence"); *United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1165 (9th Cir. 2008) (describing independent source doctrine as allowing admission of "evidence that is actually found by legal means through sources unrelated to the [prior unlawful] search."). The independent source doctrine thus removes from the scope of the exclusionary rule evidence actually obtained pursuant to an independent source, so long as the source (such as a valid search warrant) is truly

independent and untainted by the prior police conduct. *See United States v. Stabile*, 633 F.3d 219, 243 (3d Cir. 2011). The doctrine is distinct from other exceptions to the exclusionary rule because it requires that there be a complete break in the causal chain between the illegality and the acquisition of evidence; it asks a court to decide whether the evidence was actually discovered lawfully through an independent source. If so, exclusion is not required. *See United States v. Scott*, 270 F.3d 30, 44-45 (1st Cir. 2001) (noting that "in the case of an actual discovery by an independent source," doctrine "permits use of the evidence because it breaks the causal chain between the constitutional violation alleged and the discovery of the evidence challenged").

By contrast, the inevitable discovery doctrine applies to situations involving an actual unlawful seizure or discovery of evidence and serves to permit use of that evidence when the evidence would have eventually been discovered in a lawful manner had it not first been seized unlawfully. *See Nix*, 467 U.S. at 444 (describing inevitable discovery doctrine as applying when the evidence at issue was not later obtained independently, but it "ultimately or inevitably would have been discovered by lawful means"); *see also United States v. Lazar*, 604 F.3d 230, 239 (6th Cir. 2010) ("To establish inevitable discovery, the government must show that the evidence would have been acquired lawfully through an independent source absent the government misconduct."). Unlike the independent source doctrine, inevitable discovery involves an inquiry into what might have, as opposed to what actually, happened. *See Markling*, 7 F.3d at 1318 n.1 (describing difference between doctrines and noting that

inevitable discovery applies where evidence is "not actually discovered by lawful means, but inevitably would have been"); *United States v. Zavala,* 541 F.3d 562, 580-81 (5th Cir. 2008) (rejecting applicability of inevitable discovery doctrine because government did not propose "hypothetical scenario" as to how it "would have obtained" evidence "in the absence of police misconduct").

Having examined the underlying core applications of the inevitable discovery and independent source doctrines, we note that those doctrines are distinguishable based on the manner in which the challenged evidence is actually obtained: the inevitable discovery doctrine applies to situations involving unlawful seizures of evidence, whereas the independent source doctrine applies to lawful seizures following a prior instance of unlawful police conduct. We conclude that this difference is significant in the context of deciding whether each doctrine may be applied consistently with the statutory exclusionary rule, the application of which hinges on whether evidence was "obtained" in violation of the law. *See* TEX. CODE CRIM. PROC. art. 38.23; *Daugherty*, 931 S.W.2d at 268; *Johnson*, 871 S.W.2d at 750-51. Although evidence that has actually been acquired in an unlawful manner is considered "obtained" in violation of the law, regardless of whether it inevitably would have been discovered, the same cannot be said of evidence discovered and obtained pursuant to an independent source because that evidence is lawfully obtained at the time of seizure. *Daugherty*, which deals only with situations involving unlawful acquisition of evidence, does nothing to preclude the applicability of a doctrine that governs situations involving actual

lawful obtainment of evidence. Our adoption of the independent source doctrine is thus wholly consistent with the Court's rationale for rejecting the inevitable discovery doctrine in *Daugherty*.

In light of the fact that the inevitable discovery and independent source doctrines are distinguishable based on the lawfulness of the actual act of obtaining evidence, and because this distinction is key to the applicability of the statutory exclusionary rule, we disagree with the court of appeals's assessment that the inevitable discovery and independent source doctrines should similarly be rejected as incompatible with the Texas exclusionary rule. We, therefore, conclude that our adoption of the independent source doctrine, which applies only to lawfully obtained evidence, is logically consistent with our prior rejection of the inevitable discovery doctrine.

### IV. Conclusion

We conclude that the plain language of Article 38.23, which provides for exclusion of evidence "obtained" in violation of the law, is wholly consistent with, and does not preclude application of, the independent source doctrine. We further observe that our prior rejection of the inevitable discovery doctrine does not imply or necessitate our rejection of the independent source doctrine here. We, therefore, hold that the court of appeals erred by holding that the independent source doctrine is inapplicable in Texas. We remand this cause to the court of appeals for further consideration of appellant's argument that the trial court erroneously denied his motion to suppress.

Delivered: December 11, 2013

Publish