**Affirmed and Opinion Filed December 30, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01537-CR

**MARK LYNN MILLIGAN, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 363rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F11-27465-W**

## OPINION

Before Justices FitzGerald, Fillmore, and Stoddart
Opinion by Justice FitzGerald

A jury convicted appellant of murder, found that he acted under the immediate influence of sudden passion arising from an adequate cause, and assessed punishment at fifteen years' imprisonment and a $5,000 fine. In a single issue on appeal, appellant asserts the trial court erred in denying his motion to suppress because the police failed to obtain a search warrant prior to "pinging" his cell phone to determine his location. We affirm the trial court's judgment.

### BACKGROUND

Appellant is the father of three children with Kimberly Jenkins. At the time of this incident, appellant and Jenkins were estranged. Jenkins had been living in an apartment in Garland with her sister, but at the end of October began moving to her niece's house in Dallas. Jenkins's sister was also moving to a new location, so the apartment was semi-vacant.

On October 29, 2011, appellant dropped off the children at the niece's house. Jenkins and appellant argued about the fact that Jenkins had a boyfriend and a physical altercation ensued. Jenkins's nephew came out of the house and began fighting with appellant. Appellant told the nephew that Jenkins was "a cheating bitch," and bit the nephew and stomped on his foot. Jenkins called the police, but appellant was gone by the time the police arrived.

Later that night, Jenkins and Jesus Dominguez went out to celebrate her birthday. Both Jenkins and Dominguez were drinking and "had quite a few." Throughout the evening, Jenkins and appellant exchanged "hateful" texts. Jenkins provided Dominguez with appellant's cell phone number, and Dominguez sent text messages to appellant as well.

Jenkins and Dominguez returned to the sister's apartment where they planned to spend the night. Dominguez took a picture of Jenkins performing oral sex on him and sent the picture to appellant on his cell phone.

Around 1:00 a.m., Jenkins and Dominguez awakened to a loud banging on the door of the apartment. Jenkins described the sound as though someone was trying to kick the door in. When Dominguez got up and answered the door, appellant shot him in the head. Appellant then fired at Jenkins and chased Jenkins through the apartment. When he caught her, appellant put the gun in Jenkins's mouth and fired; the gun did not discharge. Jenkins escaped to a neighbor's apartment and the neighbor called the police.

Lieutenant Shawn Roten of the Garland Police Department testified that on October 30, 2011 at 1:14 a.m., the Garland Police Department received multiple reports about a gunshot disturbance. The first responding officers found Jenkins, who had been assaulted, and Dominguez, who was deceased. Roten arrived shortly thereafter.

Jenkins told Roten the shooter was her estranged husband and she was afraid of him. Jenkins explained that she had tried to get away from appellant by moving to North Carolina, but

he followed her there. Then he followed her back to Dallas. Jenkins expressed concern for the safety of her three children and her sister, who also lived in the area. She was afraid that appellant was going to go to her sister's house and kill her sister and her three children. She gave Roten the address and a description of the vehicle appellant was driving. Roten sent officers to Jenkins's sister's address to check for appellant.

The police did not know where appellant was. Between 1:20 and 2:00 a.m., the police put out a BOLO, or "be on the lookout for" notice to police in the area and provided a description of appellant's vehicle, a 1996 blue Chevrolet Suburban bearing North Carolina plates, the specific license number, and specific information of the vehicle's distinctive company decal. The BOLO was sent to all of North Texas and to Region 1, which is the northwest corner of the state. Having learned appellant's cell phone number and his cell service provider, T-Mobile, Officer Roten also requested a ping on the phone to determine the location of the phone.[1] Roten testified that the ping could be used to triangulate to determine the location of the phone. Roten did not have a search warrant. Roten did not request or receive any contents from appellant's phone.

Between 3:30 and 3:50 a.m., Officer Roten received the location of the phone from T-Mobile and requested dispatch to relay the location information to the Denton County Sheriff's Office. As a result, a deputy drove to the location, the intersection near 27735 Highway 380 East in Aubrey, Texas, in Denton County but did not find appellant. The department also issued an updated BOLO giving this new location. The deputy continued driving west on Highway 380 to check the area and discovered a Little Elm police officer had actually located appellant's vehicle in a parking lot. When Officer Roten was pressed by the defense to agree that the two officers worked together or at least acted after receiving the location information derived from the ping,

---

[1] Under the Stored Communications Act ("SCA"), a provider may disclose customer records without a court order or a warrant in emergency situations. *See* 18 U.S.C.A. § 2702(c)(4) (West Supp. 2014). Neither party references the SCA here.

Officer Roten emphasized that only the Denton County Sheriff's Office received the ping information and dispatched the deputy to the intersection, and that he had no idea what the Little Elm officer was doing in the area other than following up on the original BOLO.

Appellant was arrested, and Roten was notified. Appellant did not make any incriminating statements at the time of his arrest.

Garland Detective Stacy Tooke interviewed appellant after he had been arrested and returned to Garland. Appellant explained that he had made several phone calls, and expressed his belief that he was located by police using a cell phone triangulation technique. Appellant showed Tooke what was on his cell phone—a picture of Jenkins having oral sex with Dominguez. Appellant admitted culpability for his actions and explained why he did what he did. Then, appellant took the officers to a location where they recovered the gun he used in the shooting.

Prior to trial, appellant moved to suppress the gun and the statement he made to the police after his arrest because the "ping" of his cell phone was performed without a search warrant. Following a hearing, the trial court denied the motion. Appellant's statement to the police was not introduced at trial. Therefore, the only evidence at issue is the evidence pertaining to the gun and the gun itself.

## ANALYSIS

In his sole issue on appeal, appellant contends the State's warrantless acquisition of third-party information concerning the location of his cell phone violated the Fourth Amendment prohibition against unreasonable search and seizure. The State responds that appellant had no reasonable expectation of privacy in the third-party data used to determine the location of the cell phone. Alternatively, the State argues a search warrant was not required because there were exigent circumstances or the police were acting in their community caretaking function.

–4–

We review a trial court's ruling on a motion to suppress under a bifurcated standard. We give almost total deference to the trial court's determination of the historical facts and we review de novo the court's application of the law to the facts.[2] Under this standard, the trial court is the sole judge of the credibility of the witnesses and their testimony.[3]

Appellant's complaint relies entirely upon his challenge of the ping process which yielded the location of his cell phone which resulted in appellant's arrest in his vehicle. However, the record does not support his position that appellant was located only as a result of the ping. On the contrary, according to Officer Roten, the ping information was forwarded to the Denton County Sheriff's Office, which then dispatched a deputy to the specific intersection in question. The deputy did not locate appellant's vehicle. It was only when the deputy continued to drive west on Highway 380 that he came across the Little Elm officer who had independently followed up on an earlier BOLO alert and located appellant's vehicle. On this record, as appellant was not located or apprehended because of the ping information, the motion to suppress was properly denied.

Even assuming appellant was arrested because of the ping initiated on his cell phone, we need not engage in an exhaustive constitutional analysis as to whether and to what extent appellant was entitled to a reasonable expectation of privacy in the use of his cell phone under the circumstances presented and whether the ping absent a search warrant violated same. We need only recognize the trial court correctly concluded exigent circumstances excused the lack of a warrant. Exigent circumstances are one of the recognized exceptions to the general rule requiring a search warrant.[4] The exigent circumstances or emergency doctrine allows an

---

[2] *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

[3] *Maxwell v. State,* 73 S.W.3d 278, 281 (Tex. Crim. App. 2002).

[4] *See McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003).

immediate warrantless search when a police officer has reasonable cause to believe that if the search were delayed to obtain a warrant, serious bodily injury or harm might result.[5] "The need to protect or preserve life or avoid serious injury is justification for what would otherwise be illegal absent an exigency or emergency."[6] We apply an objective standard of reasonableness in determining whether a warrantless search is justified, taking into account the facts and circumstances known to the police at the time of the search.[7]

Roten testified that he observed the deceased in the doorway of the apartment when he arrived on the scene. Roten learned that appellant was Jenkins's estranged spouse and that he left the crime scene in possession of a firearm. Jenkins feared him, and appellant had followed her to North Carolina and then back to Dallas. Jenkins expressed concern for the safety of her sister and for the safety of her own children, and stated that she was afraid that appellant was going to her sister's house to kill them. Roten requested the ping to see if appellant was in the area. Roten said that he knew there was "a man with a gun out there who had already shot and killed a person and had shot at another." He feared for the sister, the children, and the officers he sent to the sister's house for protection.

Appellant argues that Jenkins's sister and her children had adequate police protection and the police could stop appellant if he showed up at the residence; and the ping was not received until a couple of hours after it was requested, well after any exigency had passed. We disagree. We instead look at the facts and circumstances known to the police at the time the ping was requested. The record reflects that the facts and circumstances known to Roten at the time adequately show that emergency access to the location of appellant's cell phone, to assist in

---

[5] *Brimage v. State*, 918 S.W.2d 466, 500–01 (Tex. Crim. App. 1996) (op. on rehearing).

[6] *Mincey v. Arizona*, 437 U.S. 385, 394 (1978).

[7] *Colburn v. State*, 966 S.W.2d 511, 519 (Tex. Crim. App. 1998).

locating appellant and to prevent what the police perceived as imminent danger to other individuals and police, was reasonably justified under the exigency exception.

Finally, even assuming without deciding the use of the ping without a warrant constituted an illegal search, any taint from the use of that data was sufficiently attenuated. The federal exclusionary rule is a deterrent sanction that bars the prosecution from introducing evidence obtained in violation of the Fourth Amendment.[8] The Texas statutory exclusionary rule is broader than the federal exclusionary rule; the Texas rule applies to evidence that is obtained in violation of the federal and state constitutions, United States laws, and Texas laws.[9] The primary purpose of Article 38.23(a) is to deter unlawful actions that violate the rights of criminal suspects in the acquisition of evidence for prosecution.[10]

But if the evidence seized is sufficiently attenuated from the violation of the law, the evidence will not be excluded if the taint from the illegality has dissipated by the time the evidence is acquired.[11] Here, appellant argued that the gun and evidence concerning the gun should be suppressed. Even if the police used appellant's location data to arrest him, there was no allegation of an illegal arrest. Following appellant's arrest, he took the police to the location where the gun was retrieved. This retrieval of the gun was sufficiently attenuated from the use of appellant's cell phone data to locate him as to remove the taint from any illegality.

---

[8] *Davis v. United States*, 131 S. Ct. 2419, 2423 (2011).

[9] *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005); *Wilson v. State*, 311 S.W.3d 452, 458 (Tex. Crim. App. 2010).

[10] *Wilson*, 311 S.W.3d at 459.

[11] *Wehrenberg v. State*, 416 S.W.3d 458, 469 (Tex. Crim. App. 2013).

Under these circumstances, the trial court did not err in denying appellant's motion to suppress. Appellant's sole issue is overruled. The trial court's judgment is affirmed.


/Kerry P. FitzGerald/

KERRY P. FITZGERALD
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
121537F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

MARK LYNN MILLIGAN, Appellant

No. 05-12-01537-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F11-27465-W.
Opinion delivered by Justice FitzGerald.
Justices Fillmore and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered December 30, 2014.