

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-17-00038-CR

MICHELLE SKYY                                              APPELLANT

V.

THE STATE OF TEXAS                                     STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
## TRIAL COURT NO. 1428429D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Michelle Skyy appeals the trial court's denial of her motion to suppress evidence in the prosecution against her for possession of a controlled substance, methamphetamine. *See* Tex. Health & Safety Code Ann. § 481.102(6) (West Supp. 2017) (categorizing methamphetamine as a penalty-group-1 controlled substance), § 481.115(d) (West 2017) (criminalizing the

---

[1]*See* Tex. R. App. P. 47.4.

possession of a penalty-group-1 controlled substance).  We affirm the trial court's judgment.

## Background

### I.  Factual background

At approximately 9:00 a.m. on April 29, 2015, Skyy called 911 and told the dispatcher that her husband, Sean Valdez,[2] was threatening her with an AR-15 in their home.  Arlington police began to coordinate a SWAT team response and officers arrived on the scene.  Shortly after they arrived, Valdez exited the home without the weapon and police arrested him.  Once police had secured Valdez and placed him in a patrol car, Officer Jesse Manning and two additional officers conducted a protective sweep of the home.

At the suppression hearing, Officer Manning testified that they performed the protective sweep "to make sure . . . that there[ was] no one else injured or . . . inside the house that could be potentially part of the problem."  He specifically denied that the purpose of the sweep was to search for evidence.  During the sweep, the officers discovered in the master bedroom what Officer Manning described as "a very tall wardrobe closet, like a portable wardrobe closet [that] was 6-foot tall."  Concerned that a person could be in the wardrobe closet, Officer

---

[2]Valdez also appealed the trial court's denial of his motion to suppress. *See Valdez v. State*, No. 02-17-00040-CR (Tex. App.—Fort Worth June 7, 2018, no pet. h.) (mem. op., not designated for publication).

Manning looked inside and found what appeared to be "fairly substantial" marijuana plants that were "pretty tall[ and] significant."

After the protective sweep, which Officer Manning testified lasted "[m]aybe two minutes," the officers exited the home and informed detectives on the scene of the discovery of marijuana plants in the master bedroom. The officers then secured the house and decided to apply for a search warrant to look for the AR-15 allegedly used to threaten Skyy.

According to Officer Jack Jenkins, once Valdez was taken to jail, he told another detective during an interview that the AR-15 was located in a storage ottoman in the master bedroom. Using this information, Officer Jenkins applied for and obtained a search warrant to look for the AR-15 ("the gun warrant").

Detective William Bill, a narcotics detective, assisted Officer Jenkins in executing the gun warrant. While executing the gun warrant, Detective Bill observed the wardrobe closet containing the marijuana plants and removed the plants from the house. Based on his observations during the execution of the gun warrant, Detective Bill applied for and obtained a second warrant to search the home for additional marijuana and items used to distribute marijuana ("the drug warrant"). According to Officer Bill's police report, which was admitted into evidence at the suppression hearing, when he executed the drug warrant he found methamphetamine and additional marijuana inside a safe in the garage.

3

At some point in the afternoon, in addition to the marijuana plants found inside the home, Officer Bill discovered more marijuana and "a large amount of cash" inside Skyy's vehicle.

## II. Procedural history

Skyy was charged with one count of possession of four or more but less than 200 grams of methamphetamine and one count of possession of four or more but less than 200 grams of methamphetamine with an intent to deliver. *See* Tex. Health & Safety Code Ann. §§ 481.102(6), 481.115(d). Before trial, Skyy moved to suppress any and all evidence obtained by the State without reasonable suspicion or a search warrant. The motion did not identify the evidence Skyy wished to suppress, but at the suppression hearing the above-recited evidence was introduced and Skyy's counsel argued three-fold: that the protective sweep was unlawful, that Officer Jenkins's search warrant was an illegal search warrant because it was based on information obtained through the illegal protective sweep, and that the drug warrant was "critically defective."

After the trial court denied Skyy's motion, she pleaded no contest and was placed on deferred adjudication pending a two-year period of community supervision.

## Discussion

Skyy brings two issues on appeal, both relating to the motion to suppress. In her first issue, Skyy argues that the trial court abused its discretion by denying her motion to suppress. In her second issue, Skyy argues that the trial court

4

abused its discretion when it failed to enter written findings of fact and conclusions of law. We overrule both and affirm the trial court's judgment.

## I. Denial of Skyy's motion to suppress

### A. Standard of review and applicable law

Generally, we review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

But where, as in this case, we must review a magistrate's probable cause determination, we apply the deferential standard of review set out by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983). *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). Under that standard, we uphold the magistrate's probable cause determination "so long as the magistrate had a substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331 (internal citations omitted); *see also State v. McLain*, 337 S.W.3d

5

268, 271 (Tex. Crim. App. 2011); *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010).

In performing our review, we interpret the affidavit supporting the warrant "in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. When in doubt, we defer to all reasonable inferences that the magistrate could have made." *McClain*, 337 S.W.3d at 271. "The focus is not on what other facts could or should have been included in the affidavit; the focus is on the combined logical force of facts that are in the affidavit." *State v. Duarte*, 389 S.W.3d 349, 354–55 (Tex. Crim. App. 2012).

## B. Preservation

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015), *cert. denied*, 136 S. Ct. 1461 (2016). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). Preservation of error is a systemic

requirement that this court should review on its own motion. *Darcy v. State*, 488 S.W.3d 325, 327–28 (Tex. Crim. App. 2016).

Skyy's motion to suppress sought the suppression of "any and all evidence seized or obtained as a result of illegal detention," "evidence that will be offered by the State," "[a]ny statements and acts allegedly made by [Skyy] . . . , and any tangible or other evidence seized or acquired then, or at any later time as a result of said statements or acts." She did not clarify at the hearing what evidence she sought to suppress, nor did she clarify this in her brief on appeal. We cannot discern which items of evidence she wanted to suppress. Accordingly, Skyy has failed to preserve any error. *See Johnson v. State*, 548 S.W.2d 700, 706 (Tex. Crim. App. 1977) (holding no error in the overruling of a motion to suppress when the appellant failed "to state what evidence, if any, was obtained as a result of the alleged unlawful arrest"); *see also Amador v. State (Amador II)*, 275 S.W.3d 872, 874 n.3 (Tex. Crim. App. 2009) ("[A] motion to suppress 'must . . . identify the items which the defendant seeks to suppress.'" (quoting 6 Wayne R. LaFave*, Search and Seizure* § 11.2(a) (4th ed. 2004))).

### C. The protective sweep and the independent source doctrine

Even if we were to hold that Skyy preserved her argument that the trial court erred by denying her motion to suppress, her arguments fail because of the application of the independent source doctrine. The foundation of Skyy's argument is her contention that the protective sweep was illegal and its illegality tainted the gun and drug warrants in such a way to render them unsupported by

7

probable cause. The State counters that, under the independent source doctrine, even if the protective sweep was unjustified and therefore illegal, any illegality did not taint the gun and drug warrants. We agree.

Simply put, the independent source doctrine provides that facts do not become "'sacred and inaccessible' simply because they are first discovered unlawfully; rather, '[i]f knowledge of [facts] is gained from an independent source they may be proved like any others[.]'" *Wehrenberg v. State* (*Wehrenberg II*), 416 S.W.3d 458, 464 (Tex. Crim. App. 2013) (quoting *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S. Ct. 182, 183 (1920)). Thus, the independent source doctrine allows for evidence derived or obtained from a lawful source so long as that source is separated from any illegal conduct by law enforcement. *Id.* (citing *Nix v. Williams*, 467 U.S. 431, 443, 104 S. Ct. 2501, 2508 (1984)).

The court of criminal appeals held in *Wehrenberg II* that application of the independent source doctrine is consistent with Texas law. *Id.* at 467–68. And upon remand, this court held that the doctrine applied to the facts of that case—facts that are similar to those in this case. *Wehrenberg v. State* (*Wehrenberg III)*, Nos. 02-11-00560-CR, 02-11-00561-CR, 2014 WL 890320, at *1–2 (Tex. App.—Fort Worth Mar. 6, 2014, pet. ref'd) (mem. op., not designated for publication). In *Wehrenberg*, a confidential informant notified police that a number of individuals were planning to cook methamphetamine in a house that was already under police surveillance. *Wehrenberg v. State* (*Wehrenberg I*), 385 S.W.3d 715, 717

8

(Tex. App.—Fort Worth 2012), *rev'd*, *Wehrenberg II*, 416 S.W.3d at 461. A few hours after receiving the tip, police proceeded to the residence and, without a search warrant, entered through the front door, removed several people (including Wehrenberg) and placed them in the front yard, and then performed a protective sweep. *Id.* It was undisputed that the police did not have a warrant or permission to enter the home. *Id.* An investigator who had participated in the protective sweep then prepared a search warrant affidavit and obtained a search warrant, upon execution of which police found evidence of methamphetamine production. *Id.* We held on remand that "[b]ecause the police did not rely upon any of the information that they may have gleaned during the initial warrantless entry to support their request for a search warrant," the case fell squarely in the parameters of the independent source doctrine. *Wehrenberg III*, 2014 WL 890320, at *1 (quoting *Wehrenberg I*, 385 S.W.3d at 727).

Skyy argues that "[i]n the absence of the evidence obtained during the illegal sweep of [Skyy's] home" there was no probable cause to justify the issuance of a warrant. She does not specify if her argument applies to the gun warrant or the drug warrant, but even if we assume it applies to both, she is incorrect. She does not point to any statement within either supporting affidavit that relied upon information gleaned from the protective sweep, and we have determined that neither warrant relies upon any such information.

9

The gun-warrant affidavit stated that Officer Jenkins had reason to believe that the AR-15 used by Valdez to threaten Skyy was located in their home. Officer Jenkins explained his basis for this belief using the following facts:

- Skyy's explanation to Officer Jenkins that she and Valdez were arguing about getting a divorce when Skyy picked up the AR-15, at which point Valdez confronted her, took the AR-15, pointed the AR-15 at her, and threatened to kill her if she tried to take his things;

- Skyy's statements in her call to 911 that Valdez threatened her with the AR-15, grabbed her by the arm, and threw her in the vehicle;

- Valdez's statements during an interview after he was arrested in which he denied assaulting Skyy and stated he took the AR-15 from Skyy's vehicle before she left because he did not want her to take it; and

- Valdez's statement that the AR-15 was in a small, cushioned bench at the foot of the bed in the master bedroom.

The drug-warrant affidavit described the issuance of the gun warrant and the execution thereof. It stated in part, "Once inside the residence, [Detective Bill] observed in plain view, in the master bedroom a large grow tent containing five [plants] which [Detective Bill] immediately recognized to be marijuana plants in various stages of cultivation." The affidavit then described how Detective Bill seized the marijuana plants and stated that he is familiar with marijuana due to his training and experience and that based upon the marijuana located inside the home "along with the limitations of the initial search warrant," he believed there was more contraband inside the home. The drug-warrant affidavit did not rely upon any information gained from the protective sweep.

10

Both affidavits provided sufficient evidence of probable cause to support the issuance of a warrant and did not rely upon information obtained in the protective sweep.[3] We therefore overrule Skyy's first issue.

## II. Request for findings of fact and conclusions of law

In her second issue, Skyy argues that the trial court abused its discretion by failing to enter findings of fact and conclusions of law, but she never requested them. Valdez, her husband and codefendant who was represented by separate counsel, did file a request for findings of fact and conclusions of law. Skyy contends that the trial court should have treated her husband's request as a joint request, but she supplies no support for this proposition, nor have we found any. Without a timely request, the trial court was under no duty to issue findings and conclusions. *See State v. Cullen*, 195 S.W.3d 696, 698–99 (Tex. Crim. App. 2006). We therefore overrule Skyy's second issue.

---

[3]To the extent that Skyy argues alternatively that the gun warrant is void because of a discrepancy between the time stamp on the affidavit and a time stamp on the warrant, she did not raise any such argument in the trial court and therefore failed to preserve any related error for our review. *See* Tex. R. App. P. 33.1(a)(1).

## Conclusion

Having overruled each of Skyy's issues, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

BONNIE SUDDERTH
CHIEF JUSTICE

PANEL:  SUDDERTH, C.J.; GABRIEL and PITTMAN, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 7, 2018