**Opinion issued July 22, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01–12–01174–CR

———————————

**OSCAR GERARDO DAVILA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1322703**

## O P I N I O N

We originally issued our memorandum opinion in this appeal on May 15, 2014. We withdraw our previous memorandum opinion and judgment, and substitute this opinion and judgment in their place.

Oscar Davila pleaded guilty to possession with intent to deliver more than 400 grams of cocaine, and the trial court assessed punishment at 25 years' confinement.[1] In two issues, Davila contends that the trial court erred by (1) overruling his motion to suppress evidence collected during a police search of his home and (2) assessing $294 in court costs that were unsupported by the record. We affirm.

## Background

One October evening, a joint law-enforcement team, including United States Drug Enforcement Agency Special Agent M. Schmidt, sent a trusted confidential informant to Davila's house to arrange a deal to buy two kilograms of cocaine. Schmidt testified that he had partnered with the informant on other successful investigations and that he was a reliable source. That evening, the informant wore a concealed recording device, allowing Schmidt to listen to the entire conversation between the informant, Davila, and the others inside Davila's house. Schmidt monitored the audio feed from the informant's wire and other law enforcement officers maintained visual surveillance of the outside of Davila's house. According to Harris County Deputy Sheriff B. Katrib, parked cars lined the narrow street in front of Davila's home, making surveillance difficult.

---

[1]  TEX. HEALTH & SAFETY CODE ANN. § 481.112(f) (West 2010) (establishing criminal penalty for knowingly manufacturing, delivering, or possessing with intent to deliver more than 400 grams of controlled substance).

2

When the informant approached the house, Davila and A. Lopez were sitting on the bed of a pickup truck in the driveway. Davila, Lopez, and the informant went inside the house where Davila showed the informant one kilogram of cocaine. The informant then asked to see the other kilogram. Lopez went outside to the truck, retrieved the other kilogram of cocaine, and brought it inside the house to show the informant. Relying on a child who was in the house as an interpreter, Davila and the informant discussed details of the deal.

The informant left the house and contacted Special Agent Schmidt to report what he had seen. The informant said that he last saw the two kilograms of cocaine on the kitchen counter and that Davila appeared "very nervous and in a hurry to do the deal." Based on the informant's report, Schmidt signaled for Katrib and a team of other law enforcement officers to conduct a protective sweep of Davila's house without a warrant. The team members approached the house, identified themselves, and entered the house without consent. The team cleared the house of all of its inhabitants, including Davila, Lopez, Davila's wife, and several children. The law enforcement officers handcuffed Davila and Lopez and brought everyone else into the front yard. Lopez tried to run back into the house, but the team stopped him and brought him back outside.

Once everyone was in the front yard, a member of the law enforcement team used a specially-trained dog to conduct a dog-sniff test of the truck parked in the

3

driveway. The dog alerted officers that there was an odor of some narcotic on the car.

Using a laptop computer, Harris County Deputy Sheriff A. Ortiz relied only on information from the informant and the results of the sniff test of the truck to complete an affidavit in support of a warrant. Ortiz e-mailed the affidavit to another officer who submitted the request for a warrant. The affidavit stated:

> On 10/06/2011, I spoke with investigator B. Katrib of the Harris County Sheriff's Office Narcotics Unit, who advised me of the following facts:
>
> Katrib told me that on 10/06/2011, he met with a confidential source, referred to as CS for the purposes of this investigation and affidavit. For safety purposes the name of this CS will be kept confidential. Katrib told me that he spoke with DEA Special Agent M. Schmidt, of the Houston Field Office, who told Katrib that this CS has provided information in the past on several occasions, which proved to be true and correct, and led to the seizure of narcotics and the arrest of individuals and charging them with felony offenses.
>
> Katrib told me that on 10/06/2011, at approximately 2100 hours, he along with several DEA Special Agents, met with this CS, who told them that he was going to the residence . . . in order to discuss a cocaine deal. Katrib told me that he along with other DEA Special Agents, maintained surveillance on the target residence. Katrib told me that the CS went to the aforementioned location and met with two Hispanic males at the driveway.
>
> Katrib told me that the CS walked into said residence and walked out shortly after, and departed the residence. Katrib told me that the CS told S/A Schmidt that the CS and two Hispanic males entered the kitchen of said residence and that the CS told S/A Schmidt that one Hispanic male walked out to the driveway and retrieved what he believed to be one kilogram of cocaine from behind the driver seat of the tan Chevy pick up truck . . . and walked inside the kitchen.

4

Katrib told me that the CS told S/A Schmidt that the same Hispanic male walked back out to the same aforementioned vehicle and retrieved what the CS believed to be an additional kilogram of cocaine. Katrib told me that the CS told S/A Schmidt that, based on past experience, he is familiar with the physical appearance of several controlled substances, including cocaine, and marihuana.

Katrib told me that, he along with other Special Agents maintained surveillance on the target residence, and did not see any additional people or vehicles arrive or depart this location. Katrib told me that on 10/06/2011, at approximately 2140 hours, he spoke with Deputy Curtis of the Harris County Sheriff's Office K-9 Division. Katrib told me that Deputy Curtis told him that he deployed his K-9 partner "ANDOR" on the tan Chevy pick up truck identified by Texas license plate number [ ] and that "ANDOR" alerted for the odor of narcotics. Katrib told me that Deputy Curtis told him that "ANDOR" has been and remains certified by the National Narcotics Detector Dog Association NNDDA, in the detection of the odors of cocaine, marihuana, MDMA, methamphetamine, and heroin . . . .

Once the warrant was granted, Katrib and other members of the team searched the house and backyard. They found two kilograms of cocaine buried under construction debris in the backyard. Katrib also identified a white substance on Davila's face and used a field test to determine that the powder was cocaine.

Davila was arrested and charged with possession with intent to deliver more than 400 grams of cocaine. Before trial, Davila moved to suppress the evidence collected pursuant to the search warrant, arguing that the warrant was based on information gathered during an illegal raid of his house. At a pre-trial hearing on the motion, four people testified: Special Agent Schmidt, Deputy Katrib, Davila's wife, and his daughter. The trial court denied the motion. Davila pleaded guilty

with an agreed recommendation on the punishment. Pursuant to the agreement, the trial court assessed punishment at 25 years' confinement.

Davila timely appealed the trial court's denial of his motion to suppress.

## Motion to Suppress

In his first issue, Davila contends that the trial court erred in denying his motion to suppress evidence because, in obtaining the warrant used to uncover the two kilograms of cocaine, law enforcement officials relied on information collected illegally during a warrantless search of his house and a dog sniff of his truck.

## A. Standard of review

When a defendant challenges a trial court's denial of a motion to suppress, we review the trial court's ruling for an abuse of discretion. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We give almost total deference to the trial court's determination of historical facts that depend on credibility and demeanor. *Id.* We review de novo the trial court's application of the law to the facts if resolution of those ultimate questions does not turn on the evaluation of credibility and demeanor. *Id.* When neither party requests findings of fact or conclusions of law, as is the case here, we imply the necessary findings to support the trial court's ruling, so long as the evidence viewed in the light most favorable to the trial court's ruling supports those findings. *State v. Garcia-Cantu*, 253

S.W.3d 236, 241 (Tex. Crim. App. 2008); *Jordan v. State*, 394 S.W.3d 58, 61 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). We will uphold the trial court's ruling if it is "reasonably supported by the record and is correct on any theory of law applicable to the case." *Turrubiate*, 399 S.W.3d at 150. If a warrant is issued on the basis of an affidavit that contained unlawfully obtained information, "the evidence seized under the warrant is admissible only if the warrant clearly could have been issued on the basis of the untainted information in the affidavit." *Brackens v. State*, 312 S.W.3d 831, 838 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (quotation omitted); *see Brown v. State*, 605 S.W.2d 572, 577 (Tex. Crim. App. 1980).

We first consider whether the initial warrantless sweep of Davila's house was justified. If this initial search was justified, then the later-collected evidence was admissible.

## B.    Legality of warrantless sweep

Davila argues that the State failed to meet its burden of demonstrating that there were exigent circumstances that required an immediate, warrantless search of his home. The State responds that law enforcement officials were justified in securing Davila's home without first obtaining a warrant because they had concerns that the evidence would be destroyed.

The United States and Texas constitutions protect against unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. When law enforcement does not have a warrant or consent to enter a residence, the search is presumed unreasonable. *See Juarez v. State*, 758 S.W.2d 772, 775 (Tex. Crim. App. 1988). "There is a strong preference for searches to be administered pursuant to a warrant . . . [a search] without a judicially authorized warrant is presumptively unreasonable." *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007).

The law enforcement officers did not have consent to enter Davila's house. In circumstances like these, the warrant requirement may be set aside if the State shows that (1) there was probable cause to enter the home and (2) an exigent circumstance existed that required entry without a warrant. *Id.*; *Carmen v. State*, 358 S.W.3d 285, 292–93 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Davila challenges only the exigent circumstances prong.

There are three categories of exigent circumstances: (1) aiding people whom law enforcement officers reasonably believe require assistance, (2) protecting law enforcement officers from people reasonably believed to be present, armed, and dangerous, and (3) preventing the destruction of evidence or contraband. *Gutierrez*, 221 S.W.3d at 685; *Carmen*, 358 S.W.3d at 293. The State relies on the third category.

For this category, the primary consideration is "whether there is proof that the officer reasonably believed that removal or destruction of evidence was imminent." *Turrubiate*, 399 S.W.3d at 153. Courts also consider whether the possessors of the contraband were aware that police were pursuing them, how readily the contraband could be disposed, as well as police familiarity with behavior characteristics of people involved in narcotics sale and distribution. *Id*. at 151.

Davila argues that the officers created the exigent circumstances and that there was "no justification" for "round[ing] up" Davila and the other residents before securing a warrant. Specifically, he argues that the sweep was unnecessary to prevent destruction of evidence. Citing *Turrubiate v. State*, Davila argues that the State did not meet its burden of offering "proof of imminent destruction based on affirmative conduct by those in possession of narcotics . . . ." *Turrubiate*, 399 S.W.3d at 153. In *Turrubiate*, the Court held that there were no exigent circumstances to search a house when police smelled marijuana, knocked-and-announced their presence, and suspected that the people inside might destroy contraband upon learning of their presence. *Id*. at 155. In *Turrubiate*, the deputy conducting the search testified that he believed that an immediate, warrantless search was required to "prevent [the marijuana] from being destroyed" and that if he left the premises the evidence would be "available for destruction." *Id*. at 149.

9

Mere suspicion was held insufficient evidence to merit an exigent circumstances exception to the warrant requirement. *Id*. at 152–53 & n.4.

The State argues that law enforcement officers reasonably concluded that an immediate search of Davila's home was necessary to prevent evidence from being disposed or moved. But information that would otherwise support a warrant does not, in turn, justify a warrantless search. *Cf. Hegdal v. State*, 488 S.W.2d 782, 784 (Tex. Crim. App. 1972) (affirming legality of search warrant issued solely based on information supplied by informant); *State v. McLain*, 337 S.W.3d 268, 273–74 (Tex. Crim. App. 2011) (upholding warrant relying on information from informant that defendant possessed methamphetamine at residence and business).

Relying on the informant's report that Davila possessed two kilograms of cocaine and that Davila appeared "nervous [and] in a hurry," Special Agent Schmidt testified that he directed the warrantless sweep of the house because he was concerned that Davila and others would destroy evidence. Schmidt and Katrib also testified that, based on their experience with similar narcotics investigations, the cocaine was readily disposable. Deputy Katrib testified that, based on over 1000 prior narcotic investigations, people typically employ weapons to protect the amount of narcotics involved in this case and that the amount of cocaine may be destroyed. Schmidt also stated that the geography of the street and the close proximity of neighbors who were Davila's "associates" would allow Davila to

10

easily move the cocaine. Based on these concerns, both Special Agent Schmidt and Deputy Katrib insisted that a protective sweep was necessary to protect the evidence from being destroyed or removed from the house.

The State did not, however, meet its burden of proving that the law enforcement officers reasonably believed destruction or removal of the evidence was imminent. *See Turrubiate*, 399 S.W.3d at 153. The State presented no evidence that the law enforcement officers had a reasonable belief that, before the sweep, Davila or anyone else in the house had reason to believe that law enforcement agents were present or intended to enter the house. *See, e.g.*, *Price v. State*, 93 S.W.3d 358, 368 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) ("The mere fact that drugs are involved does not give the police probable cause to believe that evidence will be destroyed so as to justify an unannounced entry."). Additionally, there was no evidence that the officers discovered Davila attempting to dispose of the evidence when they entered the home. Nor did the confidential informant report that Davila and his accomplices were armed with weapons. *Turrubiate*, 399 S.W.3d at 155. Like *Turrubiate*, the law enforcement officers here suspected, but had no evidence of, imminent destruction or removal. *See id.*; *Gutierrez*, 221 S.W.3d at 685. There were no exigent circumstances justifying the warrantless search. We conclude that the sweep of the house constituted an unreasonable search.

We now turn to consider whether—the unlawful sweep notwithstanding—the trial court properly denied the motion to suppress evidence collected pursuant to a search warrant issued after the illegal sweep of Davila's home.

**C.      Affidavit in support of warrant**

After sweeping the house, the law enforcement officers obtained a warrant to search Davila's house. During that search, they seized two kilograms of cocaine from Davila's backyard. Davila argues that warrant was issued based on information collected during the illegal sweep of the house, including the dog sniff of a truck in the driveway "performed in the midst of the raid . . . ." He argues the evidence obtained pursuant to the warrant was "obtained in violation of the [law]" and was inadmissible under article 38.23 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005).

A properly-granted search warrant must be supported by an affidavit that sets forth the facts establishing probable cause to issue the warrant. *Wilson v. State*, 98 S.W.3d 265, 270–71 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). When reviewing a magistrate's decision to issue a warrant, courts apply a highly deferential standard because of the constitutional preference for law enforcement officials to obtain warrants. *McLain*, 337 S.W.3d at 271–72. Reviewing courts are not charged with "rubber stamp[ing]" a magistrate's decision to issue a warrant. *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010). "The duty of a

12

reviewing court . . . is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* The facts alleging probable cause must sufficiently support a search warrant when viewed in light of the totality of the circumstances. *Ramos v. State,* 31 S.W.3d 762, 764–65 (Tex. App.—Houston [1st Dist.] 2000, no pet.). We inquire whether there are sufficient facts stated within the four corners of the affidavit, coupled with inferences from those facts, to establish a "fair probability" that evidence of a particular crime will likely be found at a given location. *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007); *Ramos*, 31 S.W.3d at 764–65. When the totality of the circumstances leads to the conclusion that the object of the search is likely on the premises, the allegations are sufficient. TEX. CODE CRIM. PROC. ANN. art. 18.01(b), (c) (West Supp. 2013); *Ramos*, 31 S.W.3d at 764–65.

Evidence collected during an illegal search may not be used against a criminal defendant unless it was collected in a manner "sufficiently distinguishable to be purged of the primary taint." *Carmen*, 358 S.W.3d at 293. This principle is bolstered by the Texas Code of Criminal Procedure, which provides "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. ANN. art. 38.23(a). Here,

13

Davila contends that the two kilograms of cocaine were obtained in violation of article 38.23 and, therefore, should not have been admitted into evidence.

Davila likens his circumstances to those in *Wehrenberg v. State*, 385 S.W.3d 715, 729 (Tex. App.—Fort Worth 2012), *rev'd*, 416 S.W.3d 458 (Tex. Crim. App. 2013) and argues that the federal "independent source" doctrine does not apply to article 38.23. In *Wehrenberg*, the police had maintained surveillance of a residence for about 30 days when a confidential informant reported that people inside of the house were "'fixing to' cook methamphetamine." *Id.* at 717. Based on the informant's report, the police conducted a warrantless "protective sweep" of the house, handcuffed everyone inside the house, and placed them in the front yard. *Id.* The police found no one cooking methamphetamine and no other evidence inside the house. *Id.* After the sweep, an investigator submitted a warrant affidavit based solely on facts made known to him by the confidential informant before the warrantless sweep of the house. *Id.* at 727. Thus, like this case, the affidavit did not disclose the warrantless protective sweep.

About one hour after the police had swept the house, a magistrate issued a warrant to search the house. *Id.* at 717. After searching the house, the police uncovered evidence of materials used to cook methamphetamine. *Id.* Based on the results of the search, police arrested the defendant and charged him with criminal possession of and intent to manufacture methamphetamine. *Id.* The defendant

14

moved to suppress the evidence collected pursuant to the warrant, arguing that the illegal search, his detention, and his removal from the residence "tainted the subsequently obtained search warrant" and that the warrant was not "based entirely on information obtained before the illegal entry." *Id.* at 718. Relying on the independent source doctrine, the trial court denied the motion to suppress evidence collected pursuant to the warrant. *Id.* at 717.

The court of appeals held that evidence collected pursuant to the warrant was inadmissible because police had first conducted an illegal, warrantless search of the house. *Id*. at 726–27. The court acknowledged that the circumstances of the case "would appear to fall squarely within the parameters of the independent source doctrine," but ultimately refused to affirm the trial court's denial of the defendant's motion to suppress based upon that doctrine as an exception to article 38.23 of the Texas Code of Criminal Procedure. *Id.* at 727–29.

The Texas Court of Criminal Appeals reversed, concluding that the federal independent source doctrine does not offend article 38.23 of the Texas Code of Criminal Procedure and that the "court of appeals erred by rejecting that doctrine as a basis for upholding the trial court's suppression ruling." *Wehrenberg v. State*, 416 S.W.3d 458, 461, 468 (Tex. Crim. App. 2013); *see* TEX. CODE CRIM. PROC. ANN. art. 38.23. The Court reasoned that the federal independent source doctrine is compatible with article 38.23 of the Texas Code of Criminal Procedure, and that

"[a]t its core, the independent source doctrine provides that evidence derived from or obtained from a lawful source, separate and apart from any illegal conduct by law enforcement, is not subject to exclusion." *Id*. at 465. Therefore, the primary inquiry in determining whether evidence should be suppressed when there is unlawful police conduct before the issuance of the warrant is whether the challenged evidence "was obtained by independent legal means." *Id*. (citing *United States v. May*, 214 F.3d 900, 906 (7th Cir. 2000)). Accordingly, the Court remanded the case for the court of appeals to consider whether the trial court erroneously relied upon the independent source doctrine in denying the motion to suppress. *Id.* at 473. On remand, the court of appeals concluded that the trial court did not err in denying the motion to suppress because the confidential informant's information provided "a source independent of the information that the police may have gleaned during their initial warrantless entry into the residence . . . ." *Wehrenberg v. State*, Nos. 02-11-00560-CR, 02-11-00561-CR, 2014 WL 890320, at *2 (Tex. App.—Fort Worth Mar. 6, 2014, pet. filed) (mem. op., not designated for publication).

Similarly, none of the information utilized to obtain the warrant to search Davila's house came from the prior, unlawful sweep of the house. Information from a confidential informant alone may establish probable cause, provided that it contains "some indicia of reliability or be reasonably corroborated by police before

16

it can be used to justify a search." *Blake v. State*, 125 S.W.3d 717, 727 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *see McLain*, 337 S.W.3d at 273 (holding probable cause existed based upon informant's report that he saw drugs 72 hours before entry); *Hegdal*, 488 S.W.2d at 784 (finding probable cause based solely on confidential informant's report that he saw methamphetamine at location). In *Blake*, a warrant affidavit gave the magistrate a "substantial basis" to conclude that probable cause existed when the affidavit included information from one confidential informant who "provided specific reasons why he/she believed" that the defendant was involved in criminal activity and the informant had previously provided true information leading to the arrest of other defendants and seizure of narcotics. *Blake*, 125 S.W.3d at 727 (noting that affidavit established informant's reliability and credibility and, therefore, corroboration "was not necessary").

The affidavit in support of the warrant to search Davila's house included sufficient information from which the magistrate could determine the informant's reliability and credibility. Specifically, the affidavit stated that the informant had "on several occasions" provided "true and correct" information that led to the arrest of other defendants and the seizure of narcotics. *See Blake*, 125 S.W.3d at 727. The affidavit also included the informant's report of observing in the house two kilograms of cocaine and confirmed Davila's intent to sell the cocaine to the informant. Based on the informant's statement, under the totality of the

17

circumstances, there was a "fair probability" or "substantial chance" that the cocaine would be found in Davila's house. *See Flores*, 319 S.W.3d at 702–03 (concluding that warrant contained sufficient facts to establish probable cause when anonymous informant had seen drugs inside the house, residue from house garbage can tested positive for marijuana, and marijuana stems were found in garbage can in front of house).

The affidavit in support of the warrant also stated that a dog sniff of the pick-up truck parked in the driveway revealed an odor of drugs. Even assuming that the dog sniff constituted an unreasonable search, the dog sniff alone would not invalidate the warrant and require suppression of the evidence collected during the warranted search of Davila's house, if the facts were otherwise sufficient to grant the warrant.[2] When reviewing whether an affidavit for a warrant provided a basis for finding probable cause, we do not consider each fact in isolation; we consider the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983); *Rodriguez*, 232 S.W.3d 59–60; *Ramos*, 31 S.W.3d at 764–65. While a magistrate may not issue a search warrant based upon illegally obtained

---

[2] The Fourth Amendment protects one from an unreasonable search of his home and "curtilage," which has been interpreted to include both a side garden and a front porch. *See Florida v. Jardines*, — U.S. —, 133 S. Ct. 1409, 1414–15 (2013). While Davila, in a one-sentence footnote contends that the dog sniff of his car amounted to an unreasonable search, he does not cite any authority supporting his position that the dog sniff conducted under these circumstances constitutes an unreasonable search under the Fourth Amendment.

information, "tainted" information will not invalidate an otherwise valid warrant. *Castillo v. State*, 818 S.W.2d 803, 805 (Tex. Crim. App. 1991) ("[I]f the tainted information was *clearly* unnecessary to establish probable cause for the search warrant, then the defendant could not have been harmed by the inclusion of the tainted information in the affidavit."); *see Gates*, 462 U.S. at 238; 103 S. Ct. at 2332; *Brackens*, 312 S.W.3d at 838; *see also State v. Bridges*, 977 S.W.2d 628, 632 (Tex. App.—Houston [14th Dist.] 1998, no pet.) ("The relevant inquiry into probable cause based upon a tainted affidavit is to put aside the tainted allegations and determine whether the independently acquired and lawful information clearly established probable cause.").

We have already concluded that the information from the confidential informant stated in the affidavit was sufficient for a magistrate to conclude that there was probable cause to search Davila's home. Because the affidavit contained sufficient allegations that were independent of any tainted information, we conclude that the affidavit established a "fair probability" that cocaine would likely be found upon searching Davila's home. *See Flores*, 319 S.W.3d at 702.

Accordingly, the evidence collected was pursuant to a properly-granted search warrant and, therefore, we hold that the trial court did not err in denying Davila's motion to suppress.

We overrule Davila's first issue.

**Court Costs**

In his second issue, Davila argues that the trial court erroneously assessed $294 in court costs. He argues that there is no evidence to support the calculation of these costs.

## A. Standard of review

A criminal defendant must pay certain statutorily mandated costs and fees, which vary depending on the type of offense, the underlying facts, and the procedural history of the case. *See* TEX. LOC. GOV'T CODE ANN. § 133.102 (West Supp. 2013) (listing court costs upon conviction). The district court clerk must keep a record of each fee or item of cost charged for a service rendered in a criminal action or proceeding. TEX. CODE CRIM. PROC. ANN. art. 103.009(a)(1) (West 2006). If a criminal action is appealed, an officer of the court must certify and sign a bill of costs and send it to the appellate court. *Id.* art. 103.006 (West 2006).

Court costs do not constitute a part of the guilt or sentencing of a criminal defendant; they are "a nonpunitive recoupment of the costs of judicial resources expended in connection with the trial of the case." *Johnson v. State*, 423 S.W.3d 385, 390 (Tex. Crim. App. 2014) (citation omitted); *see also Armstrong v. State*, 340 S.W.3d 759, 766–67 (Tex. Crim. App. 2011). Therefore, we review the assessment of court costs to determine whether there is a basis for the cost; we do

not apply an evidentiary-sufficiency review. *Johnson*, 423 S.W.3d at 390; *see Cardenas v. State*, 423 S.W.3d 396, 398 (Tex. Crim. App. 2014).

**B.      Court costs for conviction of felony possession with intent to deliver 400 grams of cocaine**

Davila argues that there is no evidence of how the costs were calculated and no evidence that the costs were available for review before the trial court entered its judgment.

When the record includes no bill of costs, under established precedent from this court, the JIMS "Cost Bill Assessment" meets the requirements of article 103.001 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 103.001 (West 2006); *Cardenas*, 423 S.W.3d at 398. We consider the JIMS record evidence that both the trial court and the parties had constructive notice of court costs to be imposed before the judgment was entered. *Cardenas*, 423 S.W.3d at 398–99. We review the record to determine whether there is any basis to uphold the costs. *Id.*; *Johnson*, 423 S.W.3d at 390.

The first page of the "Cost Bill Assessment" lists several costs, including:

- $5.00 "commitment fee" (*See* TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(B)(6) (West Supp. 2013) ("A defendant convicted of a felony or a misdemeanor shall pay . . . $5 for commitment or release)).

- $5.00 "release fee" (*See* TEX. CODE CRIM. PROC. ANN art. 102.011(a)(B)(6) (West Supp. 2013)).

21

- $5.00 "arrest without a warrant" (*See* TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(1) (West Supp. 2013)).

- $40.00 "clerks fee" (*See* TEX. CODE CRIM. PROC. ANN art. 102.005(a) (West 2006) ("A defendant convicted of an offense in [any court] . . . shall pay for the services of the clerk of the court a fee of $40.")).

- $15.00 "sheriffs fee" (*See* TEX. CODE CRIM. PROC. ANN art. 102.011(d) (West Supp. 2013)).

- $5.00 "security fee" (*See* TEX. CODE CRIM. PROC. ANN. art. 102.017(a) (West 2006) ("A defendant convicted of a felony offense in a district court shall pay a $5 security fee as a cost of court.")).

- $133.00 "consolidated court cost" (*See* TEX. LOCAL GOV'T CODE ANN. § 133.102(a)(1) (West Supp. 2013) ("A person convicted of an offense shall pay as a court cost, in addition to all other costs . . . $133 on conviction of a felony.")).

- $4.00 "jury reimbursement fee" (*See* TEX. CODE CRIM. PROC. ANN. art. 102.0045(a) (West Supp. 2013) ("A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to all other costs, a fee of $4 to be used to reimburse counties for the cost of juror services . . . .")).

- $25.00 "district court records preservation" (*See* TEX. CODE CRIM. PROC. ANN art. 102.005(f) (West 2006) ("A defendant convicted of an offense in a county court, a county court at law, or a district court shall pay a fee of $25 for records management and preservation services performed by the county. . . .")).

- $60.00 "drug court program fee" (*See* TEX. CODE CRIM. PROC. ANN. art. 102.0178(a) (West Supp. 2013) ("In addition to other costs on conviction imposed by this chapter, a person shall pay $60 as a court cost on conviction

of an offense punishable as a Class B misdemeanor or any higher category of [listed] offense[s].")).

- $2.00 "support of indigent defense" (*See* TEX. LOCAL GOV'T CODE Ann. § 133.107(a) (West Supp. 2013) ("A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to other costs, a fee of $2 to be used to fund indigent defense representation . . . .")).

- $6.00 "support judiciary fee" (*See* TEX. LOCAL GOV'T CODE ANN. § 133.105(a) (West 2008) ("A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to all other costs, a fee of $6 to be used for court-related purposes for the support of the judiciary.")).

- $4.00 "court technology fund" (*See* TEX. CODE CRIM. PROC. ANN. art. 102.0169(a) (West Supp. 2013) ("A defendant convicted of a criminal offense in a county court, statutory county court, or district court shall pay a $4 county and district court technology fee as a cost of court.")).

Based on the costs listed in the cost bill assessment, the record contains a sufficient basis for imposing court costs in the amount of $309. The record, thus, supports charging at least $294 in costs as directed by the statutes and rules referenced above. *See Thomas v. State*, No. 01-12-00487-CR, 2013 WL 1163980, at *4 (Tex. App.—Houston [1st Dist.] Mar. 21, 2013, no pet.) (upholding court costs of $274 when bill of costs totaled $309 due in court costs).

Accordingly, we overrule Davila's second issue.

## Conclusion

Having overruled both of Davila's issues, we affirm.


                                        Harvey Brown
                                        Justice

Panel consists of Justices Jennings, Sharp, and Brown.

Justice Sharp, dissenting. Dissent to follow.

Publish. TEX. R. APP. P. 47.2(b).