**Affirmed and Memorandum Opinion filed July 7, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-01086-CR

---

**DERRICK BROOKS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1326207**

---

### M E M O R A N D U M   O P I N I O N

In 2012, appellant Derrick Brooks pled guilty to possession of cocaine with intent to deliver. Appellant was sentenced to seven years deferred adjudication and placed on community supervision. The State subsequently filed a motion to adjudicate guilt, alleging appellant violated two conditions of his community supervision by (1) again possessing cocaine with intent to deliver, and (2) failing to attend aftercare. Appellant filed a motion to suppress evidence obtained by the

police during a search of his residence. After a hearing on both motions, the court found true that appellant had violated the conditions of his community supervision and sentenced appellant to 16 years in prison.

Appellant raises seven issues on appeal. In his fifth issue, appellant challenges the legal sufficiency of the evidence to conclude he had knowledge and possession of the cocaine recovered during the search of his residence. In his seventh issue, appellant argues the evidence was legally insufficient to prove that he failed to attend aftercare as ordered by the court. We hold the evidence contains sufficient affirmative links to conclude appellant knowingly possessed the cocaine found underneath his residence. Because we uphold the revocation of appellant's community supervision on that basis, we do not reach appellant's seventh issue.

Appellant also contends that the search of his residence was unlawful and therefore the evidence obtained during the search should have been excluded. In his first two issues, appellant asserts that no exigent circumstances justified the initial warrantless entry into the home and that only an unauthenticated duplicate of the warrant was produced at the hearing. We conclude that the initial warrantless entry, even if unlawful, does not bar the admission of evidence subsequently seized pursuant to a valid warrant. We also hold the search warrant was admissible as a duplicate under Rule 1003 of the Texas Rules of Evidence.

We do not address appellant's remaining issues because they were not preserved for appellate review. We affirm the trial court's judgment.

## BACKGROUND

In July 2012, appellant pled guilty to felony possession with intent to deliver cocaine weighing more than 4 and less than 200 grams. The court placed appellant on community supervision for seven years in accordance with Section 5 of Article

42.12 of the Texas Code of Criminal Procedure. Appellant was required to comply with several conditions, two of which are relevant in this appeal. First, appellant was to commit no offense against the laws of Texas or the United States. Second, appellant was required to submit to alcohol and drug evaluations and to attend treatment and aftercare as recommended or as designated by the court.

On February 4, 2013, appellant was pulled over by Sergeant Roy Haney of the Houston Police Department. Haney testified that he and his partner were on routine patrol when they observed two individuals traveling in a dark blue Chevy Impala. Haney testified that he smelled burning marijuana coming from the car as it passed, so he decided to pursue the car to initiate a traffic stop. According to Haney, the Impala came to a stop sign but the driver turned without coming to a complete stop or using a turn signal. Haney activated the overhead lights of his police car. The Impala did not stop immediately, however. Instead, it merely slowed down. Haney testified that through the back window of the car, he saw the driver and front passenger make furtive gestures toward their feet. The car eventually stopped just south of a house located at 3110 Canfield Road.

Appellant was identified as the driver of the Impala and the passenger was identified as Jalil Sabree. Haney testified that he was familiar with appellant and knew that appellant lived in the house at 3110 Canfield.[1] He said his knowledge stemmed from surveillance of appellant by Officer Rusty Edwards and Officer Gary Young. Haney testified that both officers had been investigating appellant for somewhere between six weeks and two months, and both officers had seen him coming to and going from the house. Haney also noticed a black Monte Carlo

---

[1] No evidence was introduced to demonstrate that appellant or anyone else owned or rented the home. Officer Rusty Edwards testified that he heard appellant indicate that his uncle had used a fake name in a purported lease of the Canfield home, but the lease was not in evidence.

3

parked next to the house. He was familiar with the car, which he testified was a Dale Earnhardt edition belonging to appellant.

Sergeant Haney conducted a protective pat-down of appellant and found a key for the house and a key for the Monte Carlo. He also felt a large bulge in appellant's left front pocket. Haney asked appellant about the bulge, and appellant replied that it was money. Haney verified that it was money by removing the cash from appellant's pocket. He next secured appellant in the back seat of the patrol car.

Haney testified that he wanted to search the Impala for marijuana, but due to his proximity to the Canfield house, he became concerned about his safety. He believed the residence was a trap house, a term for houses that are used in criminal activity. Haney testified that in his experience, trap houses typically contain multiple occupants and weapons. Wanting to make sure the scene was safe before he and his partner searched the car, Haney decided to walk around the perimeter of the Canfield house to make sure no one was behind it and nothing else was afoot. Haney walked along an adjacent lot and observed smoke emerging from a rear window. Finding the smoke suspicious, Haney testified that he approached and immediately smelled burning marijuana. Haney saw a person inside, and they made eye contact. Haney identified himself as a police officer and asked the individual to stop and put up his hands. The individual instead shut the window and drew the curtains. Haney then heard repeated thumping sounds coming from inside the house. He concluded the sound was footsteps of someone running through the residence.

Haney advised his partner that he wanted to obtain a search warrant for the house because he believed marijuana was inside. Haney called Officer Young and informed him of the details surrounding his detention of appellant. He instructed

4

Young to start drafting a search warrant. By this time, four more officers had arrived at the scene.

The officers approached the house, knocked on the door, and announced their presence. They received no response. Haney testified that he ordered a breach of the house because he was concerned about his safety and the possibility that the individuals inside would destroy evidence. The officers found three individuals inside and ordered everyone out. They did not search the home further at that time. Instead, the officers closed the door, secured the house, and waited for the warrant.

Houston Police Officer Gary Young testified that he had been investigating and conducting surveillance on appellant between six weeks and two months before Haney detained appellant on the traffic stop. Young worked in the gang unit, and he began investigating appellant in connection with a series of burglaries. Young testified that appellant was president of a gang that called itself the 103 Boys. According to Young, the gang was known for committing burglaries, robberies, thefts, and narcotics violations. During the investigation, the Canfield house became associated with appellant because appellant had posted pictures on an internet website, and the pictures revealed the address number 3110. Young and his partner, Officer Rusty Edwards, were able to confirm the house was located on Canfield because it corresponded with the pictures seen on appellant's Instagram account. Numerous text messages sent from and received by appellant's phone were also introduced into evidence. In several of the messages, appellant stated he was at his "trap," which as indicated above is a reference to a trap house. Young noted that in one message, appellant specifically stated he was at 3110 Canfield in Houston.

After receiving the phone call from Sergeant Haney informing him that appellant had been detained and that Haney believed he had probable cause to search the house at 3110 Canfield, Young testified that he went to procure a warrant. Afterward, he traveled to the house and served as the primary investigator on the scene. According to Young, the officers recovered guns and stolen cameras, iPods, and jewelry from the house. They also found a stolen laptop and cocaine inside a Pyrex beaker underneath the house. The parties stipulated that the following amounts of drugs were found in various containers: 23.89 grams of cocaine; 1.77 grams of cocaine; 5.15 grams of cocaine; and .02 ounces of marijuana. The police also recovered $2,500 in cash from appellant's person.

The State subsequently filed a motion to adjudicate appellant's guilt, alleging that appellant violated the two above-referenced conditions of his community supervision. Specifically, the State alleged appellant knowingly possessed cocaine, weighing more than 4 and less than 200 grams, with intent to deliver and failed to attend aftercare "as recommended by Treatment Alternative Incarceration Program." Appellant filed a motion to suppress the evidence seized from the house, and the trial court held a hearing on both motions. The court denied appellant's motion to suppress and found true that appellant had possessed a controlled substance with intent to deliver and had failed to submit to random drug and alcohol analysis. The court made extensive oral findings in support of its rulings. The court then sentenced appellant to 16 years confinement in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

ANALYSIS

## I.     The trial court did not abuse its discretion in finding that appellant violated one of the terms of his community supervision.

Appellant's fifth and seventh issues challenge the trial court's findings of true.[2] In his fifth issue, appellant alleges that the facts failed to link the cocaine to him affirmatively in such a way as to reasonably conclude he had knowledge and possession. We construe this argument as a challenge to the evidence supporting the trial court's finding that he knowingly possessed the cocaine found underneath the house with intent to deliver. Because appellant solely challenges the evidence that he knowingly possessed the cocaine, we focus on that issue.

### A.     Standard of review and applicable law

Appellate review of an order adjudicating guilt ordinarily is limited to determining whether the trial court abused its discretion in finding that the defendant violated the terms of his community supervision. *Duncan v. State*, 321 S.W.3d 53, 56–57 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). An order finding a violation must be supported by a preponderance of the evidence. *See Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006).

In determining whether the allegations in the revocation motion are true, the trial court is the sole trier of facts, the judge of the credibility of the witnesses, and the arbiter of the weight to afford their testimony. *Taylor v. State*, 604 S.W.2d

---

[2] Generally, when a party presents multiple grounds for reversal, an appellate court should first address those points that would afford the party the greatest relief. *See* Tex. R. App. P. 43.3; *Campbell v. State*, 125 S.W.3d 1, 4 n.1 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Accordingly, we first address appellant's evidentiary challenges to the findings of true. *See Owens v. State*, 135 S.W.3d 302, 305 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996)). When examining the sufficiency of the evidence, we consider all of the evidence admitted, both properly and improperly, as well as direct and circumstantial evidence. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).

175, 179 (Tex. Crim. App. 1980); *Akbar v. State*, 190 S.W.3d 119, 123 (Tex. App.—Houston [1st Dist.] 2005, no pet.). We examine the evidence in the light most favorable to the trial court's ruling. *Duncan*, 321 S.W.3d at 57. Proof of a single violation is sufficient to support revocation of probation. *Greer v. State*, 999 S.W.2d 484, 486 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).

To prove unlawful possession of a controlled substance, the State must establish that the accused (1) exercised care, control, or management over the contraband, and (2) knew the substance was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). The elements of possession may be proven through direct or circumstantial evidence, although the evidence must establish that the accused's connection with the substance was more than fortuitous. *Poindexter*, 153 S.W.3d at 405–06. When the accused is not in exclusive possession of the place where the contraband is found, the State must show additional affirmative links between the accused and the contraband. *See Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

An affirmative link generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it. *See id.* Courts have identified the following factors that may help to show an accused's affirmative links to a controlled substance: (1) the accused's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the accused's proximity to and the accessibility of the narcotic; (4) whether the accused was under the influence of narcotics when arrested; (5) whether the accused possessed other contraband or narcotics when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee;

8

(8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the accused owned or had the right to possess the place where the narcotics were found; (12) whether the place where the narcotics were found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt. *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006). Additionally, a large quantity of contraband may be a factor affirmatively linking appellant to the contraband. *See Olivarez*, 171 S.W.3d at 292. No set formula necessitates a finding of an affirmative link sufficient to support an inference of knowing possession; affirmative links are established by the totality of the circumstances. *See Hyett v. State*, 58 S.W.3d 826, 830 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). The number of factors present is not as important as the logical force the factors create to prove the accused knowingly possessed the controlled substance. *Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

### B. Evidence of affirmative links supports the finding that appellant knowingly possessed the cocaine.

Appellant challenges the evidence of affirmative links by noting that the cocaine was found outside and underneath the house while he was handcuffed and under arrest. The cocaine was thus not in plain view. Appellant also argues that he was not under the influence of an illegal substance, he made no incriminating statements demonstrating knowledge of the hidden cocaine, and he did not attempt to flee. Furthermore, appellant points out that he shared rent with his uncle and that when officers entered the home, they found three individuals inside.[3]

---

[3] On appeal, appellant does not contend that he did not live at the house or otherwise have a right to possession. Instead, appellant admits in his brief to living inside the home and sharing

Appellant also asserts that he was never seen underneath the house, and no fingerprints were found on the Pyrex beaker or the plastic bag inside of it containing the drugs.[4]

On the other hand, an examination of the record and the trial court's findings reveals evidence establishing the presence of several of the affirmative links factors. We begin with factor eleven. The trial court found by a preponderance of the evidence, based on evidence in the record that the court found credible, that appellant had the right to possess the place where the narcotics were found. This evidence included appellant's possession of a key to the house and a key to the Monte Carlo parked in the driveway. Several photos from appellant's Instagram account were introduced that tied him to the Canfield home. The police surveillance revealed appellant came in and out of the residence, and the police officers believed it was his house. In fact, appellant drove to the house when the officers activated their overhead lights. Numerous text messages in which appellant indicated he was at his "trap house" were also introduced, and appellant specifically provided the address of 3110 Canfield in at least one outgoing text message. Further linking appellant to the house were his clothes, some cleaner's receipts, and his Temporary Identification Card, which was found in the kitchen.[5] Also found inside were some of appellant's court documents. *See Freeman v.*

---

rent with his uncle. During the hearing, Haney testified that appellant admitted these facts. Appellant objected to the testimony, however, and in its ruling, the trial court stated that although it overruled the objection at the time it was made, it was now sustaining the objection and not considering the evidence for any purpose whatsoever. Haney's testimony regarding appellant's admissions is thus not part of the record on appeal. The trial court nevertheless found by a preponderance of the evidence that appellant had a possessory interest in the home and a right to exclude others. Appellant does not challenge these findings on appeal.

[4] Officer Jose Coronado, one of the officers on the scene, testified that to his knowledge, the beaker was never tested for fingerprints.

[5] The identification card was issued by the Texas Department of Public Safety. It lists appellant's address as another location.

*State*, 917 S.W.2d 512, 515 (Tex. App.—Fort Worth 1996, no pet.) (declaring "additional fact that Officer Hamilton found documents belonging to Freeman in the room are simply other elements which show that Freeman exercised care, custody, and control over the bedroom and its contents and was not merely a chance visitor"). Thus, the trial court did not abuse its discretion in concluding that a preponderance of the evidence supports the finding that appellant had care, custody, and control of the Canfield house and a right to possession, notwithstanding the presence of three other individuals inside the house when the officers entered.

Turning to factor ten, the record reveals that other contraband and drug paraphernalia were found in the home. Officers recovered drug scales and a small amount of marijuana. Officers testified that they also recovered firearms and numerous stolen items from the home. Factor thirteen is also present, as appellant was found with a large amount of cash. He had $2,500 on his person when he was arrested. There is also evidence of factors eight and nine, as officers testified that appellant made furtive gestures and had an odor of marijuana emanating from him at the time of the traffic stop.

Regarding factor six, even though appellant did not make incriminating statements at the time of his arrest, he made incriminating statements afterward. Officer Rusty Edwards testified that he overheard a conversation in which appellant stated that Jalil placed a stolen laptop under the house. As the trial court noted, the laptop was found under the house near scales, guns, and the Pyrex beaker containing cocaine. It is reasonable to conclude that Jalil is the same Jalil Sabree who was arrested with appellant following the traffic stop. This evidence creates a reasonable inference that appellant was aware that contraband was located in a hiding place beneath the house he possessed and controlled, and

11

likewise aware that the hidden contraband near the laptop included cocaine. The above-referenced text messages were also incriminating because appellant indicated he was at his trap house and held himself out to be president of a gang. As Officer Haney testified, a trap house is a house associated with criminal activity, and indeed stolen property and drugs were found in the house. Appellant's reference to the house as his "trap," together with the other evidence discussed above, supports an inference that appellant knew of the criminal activity—including the possession of cocaine.

Among other facts the trial court found relevant under the totality of the circumstances are that pit bulls were in the back of the house. According to Sergeant Haney's testimony, pit bulls are often used for security purposes in houses that are associated with narcotics. Officer Young testified that individuals dealing narcotics regularly hide them under their houses.

We conclude that the totality of the circumstances and the logical force of the affirmative links evidence made it reasonable for the trial court to find by a preponderance of the evidence that appellant knew where the cocaine was stored and, as a result of his care, custody, and control over the house on 3110 Canfield, knowingly possessed the cocaine hidden underneath the house. We therefore overrule appellant's fifth issue.

### C.  We need not address appellant's challenge to the second alleged violation.

Appellant next argues that the evidence does not support a finding that he failed to attend aftercare as ordered by the court. We need not reach this issue because proof of a single violation is sufficient to support revocation of community supervision. *Greer*, 999 S.W.2d at 486. Moreover, it does not appear from the record that the trial court found appellant failed to attend aftercare. At the hearing,

the court explicitly stated it did not find this allegation true, and it is not listed as a violation in the judgment adjudicating appellant's guilt.[6] Having upheld one basis for the revocation of appellant's community supervision, we need not address appellant's seventh issue. *See* Tex. R. App. P. 47.1.

## II. The trial court did not abuse its discretion in denying appellant's motion to suppress.

Appellant challenges the search of 3110 Canfield, which yielded much of the evidence discussed above, on several grounds. In his first issue, he argues the search of the residence was unlawful because exigent circumstances did not justify the warrantless entry. In his second issue, appellant argues the search was unlawful because only an unauthenticated copy of the search warrant was produced at the hearing.

### A. Standard of review

We review for abuse of discretion a trial court's ruling on a motion to suppress. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We review the record in the light most favorable to the trial court's ruling and will reverse only if the ruling is outside the zone of reasonable disagreement. *Id.* The trial court is the sole trier of fact and judge of the credibility of the witnesses and the evidence presented at the hearing on the motion. *Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007). We "must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law

---

[6] The judgment does find that appellant failed to submit to random drug and alcohol analysis, which was required by the same condition of community supervision that required appellant to attend aftercare. This finding appears to be misplaced. The State's motion did not allege failure to submit to drug and alcohol testing as a violation, and the trial court stated on the record that it found not true the aftercare violation of this condition that was alleged by the State. The State concedes in its brief that the oral pronouncement controls over the written judgment. *See Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004).

applicable to the case." *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). We give almost total deference to a trial court's determination of historical facts and review de novo the trial court's application of the law of search and seizure. *Tucker v. State*, 369 S.W.3d 179, 184 (Tex. Crim. App. 2012).

### B. Applicable law

Appellant's first issue challenges whether exigent circumstances existed to justify the warrantless entry into the house. Appellant cites *State v. Steelman*, 93 S.W.3d 102 (Tex. Crim. App. 2002), for the proposition that marijuana odor alone does not authorize a warrantless search and seizure in a house. Appellant contends that as a result of the illegal entry, the evidence obtained during the subsequent search should have been excluded as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471 (1963).

A non-consensual police entry into a residence is a search under *Katz v. United States*, 389 U.S. 347 (1967). *See McNairy v. State*, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991), *overruled on other grounds by Turrubiate v. State*, 399 S.W.3d 147 (Tex. Crim. App. 2013). A non-consensual search of a residence without a warrant is illegal unless the State establishes that probable cause exists in combination with exigent circumstances. *See Estrada v. State*, 154 S.W.3d 604, 608 (Tex. Crim. App. 2005). When exigent circumstances have not been shown, evidence obtained from the search generally must not be admitted into evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005). Evidence may be admitted despite a prior illegal entry, however, if that evidence was obtained lawfully through an independent source, such as a later search conducted pursuant to a valid warrant. *See Wehrenberg v. State*, 416 S.W.3d 458, 465–66, 471–72 (Tex. Crim. App. 2013); *Davila v. State*, 441 S.W.3d 751, 758 –762 (Tex. App.— Houston [1st Dist.] 2014, pet. ref'd).

**C.** **Appellant cannot invoke the exclusionary rule because the evidence was obtained pursuant to a valid warrant.**

We note at the outset that appellant does not challenge the existence of probable cause but solely the existence of exigent circumstances to justify the officers' warrantless entry into the house.[7] We conclude that we need not decide whether the trial court abused its discretion in finding exigent circumstances, however, because the record shows that the evidence introduced at trial was obtained not during the warrantless entry but during a later search pursuant to a warrant.

Once the officers entered the house and removed those inside, they did not conduct any further search and did not seize any items. Instead, the officers waited until the warrant had been issued and brought to the scene, at which time they reentered the house, conducted a thorough search, and seized the items introduced into evidence at trial. In his brief, appellant attempts to invoke the exclusionary rule on the basis of the officers' initial warrantless entry into the home, but his argument ignores that the evidence he seeks to exclude was seized in a later search after a warrant had been obtained. Appellant does not challenge the validity of the warrant or assert that any information used to obtain the warrant came from the prior warrantless sweep of the house. Thus, the evidence was not "obtained . . . in violation of any provisions of the Constitution or laws" of the United States or Texas, and it is not subject to exclusion. Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005); *see Davila*, 441 S.W.3d at 760–62; *Pair v. State*, 184 S.W.3d 329,

---

[7] We do not address *Steelman* because that case addresses the existence of probable cause, while appellant challenges the existence of exigent circumstances. Those two issues are distinct. *See Pair v. State*, 184 S.W.3d 329, 336 (Tex. App.—Fort Worth 2006, no pet.) ("[I]n *Steelman*, unlike in this case, there is no assertion or discussion of exigent circumstances necessitating the officers' entry into the residence. Thus, the *Steelman* facts are distinguishable from the facts of this case."); *see also Estrada*, 154 S.W.3d at 607 ("*Steelman* holds only that the odor of burning marijuana coming from a house did not give officers *probable cause* to believe that a person coming from that house committed the offense of possession of marijuana in their presence.") (emphasis added).

15

336–37 (Tex. App.—Fort Worth 2006, no pet.) (holding evidence obtained pursuant to valid search warrant after initial warrantless entry to remove individuals from home was "not obtained in violation of article 38.23(a)"). We overrule appellant's first issue.

### D. The duplicate warrant was admissible under 1003 of the Texas Rules of Evidence.

In his second issue, appellant argues the subsequent search of the residence was unlawful because only an unauthenticated copy of the search warrant was produced during the hearing. Appellant asserts that the faxed copy introduced into evidence during the hearing does not qualify as a duplicate because it was missing a completed inventory and return. We disagree.

After the traffic stop, Sergeant Haney contacted Officer Young, who then went to see Judge Blanca Villagomez in order to obtain the warrant. Young subsequently misplaced the warrant. Young testified that State's Exhibit 3 was a copy of the original search warrant. The exhibit was a faxed copy Young had sent to the narcotics division. Young testified that the copy had not been altered or tampered with in any way. He testified that he swore to the warrant under oath. He conceded, however, that he could not remember whether he swore to it in Judge Villagomez's office or at her bench.

Judge Villagomez testified that she was employed as a Harris County criminal law hearing officer. She identified Exhibit 3 as a search warrant that she signed. Although she recognized her signature on the duplicate, she had no independent recollection of signing it.

Rule 1003 of the Texas Rules of Evidence provides that a duplicate is admissible to the same extent as the original unless a question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate.

16

Tex. R. Evid. 1003. A copy of a search warrant may be used to prove the existence of a misplaced or lost original. *Cox v. State*, 267 S.W.2d 830, 832 (Tex. Crim. App. 1954).

Appellant contends that State's Exhibit 3, the faxed copy of the warrant, is not admissible as a duplicate of the original because the copy was missing a completed inventory and return. But appellant does not explain why the omission of the return from the copy made the search of his residence unlawful. He cites no authority for his contention, and nothing in rule 18.04 of the Texas Code of Criminal Procedure states that the validity of the warrant depends on the presence of the completed inventory and return.[8] Appellant does not raise questions about the original's authenticity or explain why the circumstances make it unfair to admit the duplicate. Thus, we hold the trial court did not abuse its discretion by admitting the faxed copy as a duplicate of the original under Texas Rule of Evidence 1003, and we overrule appellant's second issue.

### III. We overrule appellant's third, fourth, and sixth issues because they were not preserved for appellate review.

To preserve an error for appellate review, the complaining party must make a specific objection and obtain a ruling on the objection. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). The objection must be made at the earliest possible opportunity. *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991). In addition, the issue raised on appeal must comport with the objection made at trial. *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986).

---

[8] Under that article, a search warrant is sufficient if it: (1) runs in the name of "The State of Texas"; (2) identifies, as near as may be, that which is to be seized and name or describe, as near as may be, the person, place, or thing to be searched; (3) commands any peace officer of the proper county to search forthwith the person, place, or thing named; and (4) is dated and signed by the magistrate. Tex. Crim. Proc. Code Ann. art. 18.04 (West 2005).

In his third issue, appellant challenges the search of his cell phone because no probable cause affidavit was produced. In his fourth issue, appellant challenges the search of his residence on the grounds that the probable cause affidavit contained stale facts. In his sixth issue, appellant argues that the search was unlawful because the probable cause affidavit was tainted by an unlawful police entry onto the curtilage of his property. The record of the hearing, however, does not reveal any objection by appellant on the grounds he now raises on appeal. Because his issues on appeal do not comport with any objection raised below, we conclude these issues were not preserved for appellate review, and we overrule appellant's third, fourth, and sixth issues.

## CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgment.

/s/    J. Brett Busby
        Justice

Do Not Publish — TEX. R. APP. P. 47.2(b).
Panel consists of Justices Jamison, Busby, and Brown.